WESTERN UNION TELEGRAPH COMPANY *v.* STATE.

Opinion delivered March 18, 1907.

1. STATUTES—IMPLIED REPEAL.—Where the Legislature takes up a whole subject anew, and covers the entire ground of the subject-matter of a former statute, and evidently intends it as a substitute for it, the prior act will be repealed thereby, although there may be no express words to that effect, and there may be in the old act provisions not embraced in the new. (Page 306.)

2. SAME—TITLE.—While the title of an act is not controlling, it may properly be looked to, in case of doubt, for the purpose of ascertaining the legislative intent. (Page 308.)

3. SAME—REPEAL.—Where the Legislature takes up the entire subject-matter of former legislation regulating all foreign corporations, and passes a substitute for it, the old act will be repealed, though the old act affected certain classes of corporations which are expressly exempted by the new. (Page 308.)

4. SAME—REGULATION OF FOREIGN CORPORATIONS.—Section 2 of the act of February 16, 1899, as amended May 8, 1899, relating to the conditions upon which foreign corporations may do business in the State, was repealed by the act of April 23, 1901, covering the same subject-matter. (Page 308.)

5. FOREIGN CORPORATIONS—REGULATION.—The act of May 6, 1905, fixing the fees of foreign and domestic corporations for filing their articles of incorporation in this State, does not undertake to declare what corporations are required to file their articles. (Page 309.)

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield,* Judge; reversed and dismissed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Lewis Rhoton* and *De E. Bradshaw,* for appellee.

McCULLOCH, J.   This is an action instituted on behalf of the State of Arkansas as plaintiff against appellant, a corporation organized under the laws of the State of New York and doing business in this State as a telegraph company, to recover a balance of $19,404 fees alleged to be due to the State for filing with the Secretary of State a copy of its articles of incorporation.

Appellant filed with the Secretary of State a copy of its articles of incorporation.

Appellant filed with the Secretary of State on June 23, 1905, a copy of its articles of incorporation and paid a fee of $90, but it is shown by the pleadings in this action that appellant's capital stock was $97,370,000, and it is claimed on behalf of the State that a fee of $19,494 should have been paid, which would be $30 for the first $25,000 of the capital stock and $5 for each additional $25,000 thereof.   The court sustained a general demurrer to the answer, rendered judgment in favor of the plaintiff for the amount asked in the complaint upon the defendant's failure to plead further, and the defendant appealed.

The course of legislation in this State prescribing the terms upon which foreign corporations may do business here is as follows:

In 1887 a statute was enacted providing that, before any foreign corporation should begin to carry on any business in the State, it should, by a certificate under the hand of the president filed in the office of the Secretary of State, designate a citizen of the State as agent upon whom process against it might be served and also stating its principal place of business in the State.   Act April 4, 1887.

On February 16, 1899, another statute was passed, section one of which is substantially the same as the former statute just referred to, and section two, as amended by a later act passed during the same session on May 8, 1899, reads as follows:

"Section 2.   Every company or corporation incorporated under the laws of any other State, Territory or country, now or hereafter doing business in this State, shall file in the office of the Secretary of State of this State a copy of its charter, or

articles of incorporation, or association, or, in case such company or corporation is incorporated merely by a certificate, then a copy of its certificate of incorporation, duly authenticated and certified by the proper authority. The Secretary of State shall cause all such charters, articles of incorporation, or association, so filed, to be duly recorded in a book kept for that purpose. And such corporation shall be required to pay into the treasury of the State incorporating and other fees equal to those required of similar corporations formed with and under the laws of this State. Upon compliance with the above provisions by said corporation, a copy of such charter, or articles of incorporation, or certificate so filed, properly certified under the seal of his office, and a copy of such charter, or articles of incorporation, or certificate, certified to by the Secretary of State, shall be taken by all the courts of this State as evidence that the said corporation has complied with the provisions of this act, and is entitled to all the rights and benefits therein conferred. And such corporation shall be entitled to all the rights and privileges and subject to all the penalties conferred and imposed by the laws of this State upon similar corporations formed and existing under the laws of this State; provided, that the provisions of this act requiring copy of original articles of incorporation or charter, and certificate naming an agent, and to pay certain fees therefor, shall not apply to railroad companies which have heretofore built their lines of railroad into or through this State; provided, further, that the provisions of this act are not intended and shall not apply to 'drummers' or traveling salesmen soliciting business in this State for foreign corporations which are entirely non-resident."

Section three of this act imposed a fine of not less than $1,000 upon any foreign corporation which should fail or refuse to comply with the terms of the statute; and section four allowed corporations then doing business in the State ninety days from the passage of the act within which to comply with its terms.

The General Assembly passed another statute on April 23, 1901, entitled "An act to regulate foreign corporations other than railway, express, telegraph, palace car and insurance corporations." It reads as follows:

"Section 1. Every corporation formed in any other State, Territory, country or county, before it shall be authorized or permitted to establish a business in this State, or to continue business therein, if already established, shall, by its certificate, under the hand of the president and seal of such company or corporation, file in the office of the Secretary of this State a copy of its articles of incorporation, if not already filed therein, and also with the clerk of the county in which it has opened an office for the purpose of transacting business, and in addition thereto shall file with the Secretary of State and the clerk of the county in which it has opened an office, or commenced business, within six (6) months after the establishment of such office or the beginning of such business, a statement showing the proportional part of its capital stock which it has in the operation of its business, both in the State and in the county in which it is doing business.

"Section 2. That no corporation formed or organized in another State, Territory, country or county shall be authorized or entitled to make any contract in this State until it has complied with the provisions of the foregoing section, nor shall it be authorized to sue on any contract made in this State until the provisions of section one (1) of this act are complied with; provided, that corporations now doing business in this State may have sixty (60) days to comply with this act.

"Section 3. That the act shall not apply to railway, express, telegraph, palace car and insurance corporations, and shall take effect and be in force from and after its passage."

An act passed May 6, 1905, fixes the fees for filing articles of incorporation by foreign and domestic corporations at the sum of $30 for all corporations the capital stock of which is $25,000 or under, and an additional sum of $5 for each additional $25,000 of the capital stock.

It will be observed that the act of 1901 re-enacts, substantially, all of section two of the act of 1899, so far as concerns the requirements imposed upon foreign corporations, and, in addition thereto, requires such corporation to file a copy of its articles of incorporation with the clerk of the county in which it has opened an office for the purpose of transacting business, and also to file with the Secretary of State and county

clerk a statement showing the proportional part of its capital stock which it has in use in the State and county.

The controlling question in this case is, then, whether or not section two of the act of 1899 is impliedly repealed by the later act of 1901 on the same subject, for, if it is, there is no law requiring appellant to file copies of its articles of incorporation or pay any fee to the Secretary of State, as the later statute exempted telegraph companies from its operation.

This court has frequently dealt with the question of implied repeals, the latest utterance on the subject being the recent case of *Lawyer* v. *Carpenter,* 80 Ark. 411, where the rule so often announced by the court is re-stated as follows: "Where the Legislature takes up a whole subject anew, and covers the entire ground of the subject-matter of a former statute, and evidently intends it as a substitute for it, the prior **act will be repealed thereby, although there may be no express words to that effect, and there may be in the old act provisions** not embraced in the new." *Pulaski County* v. *Downer,* 10 Ark. 588; *State* v. *Jennings,* 27 Ark. 419; *Mears* v. *Stewart,* 31 Ark. 19; *Davis* v. *Holland,* 43 Ark. 425; *Dowell* v. *Tucker,* 46 Ark. 438; *Wood* v. *State,* 47 Ark. 488; *Inman* v. *State,* 65 Ark. 508; *Wilson* v. *Massie,* 70 Ark. 25; *St. Louis & S. F. Rd. Co.* v. *Bowman,* 76 Ark. 32. The doctrine of implied repeal by substitution is a familiar one, and has been adopted and applied by this court in all the cases cited above.

Mr. Sutherland states the same doctrine and collates fully the authorities on the subject. "Will a revision," he asks, "repeal by implication previous statutes on the same subject, though there be no repugnance? The authorities seem to answer emphatically, yes. The reasonable inference from a revision is that the Legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject-matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law." 1 Lewis' Sutherland, Construction of Stat. § 269. See, also, to the same effect, Endlich on Interpretation of Statutes, § 202, and cases cited.

The Kentucky Court of Appeals in an early case stated the following rule which is peculiarly applicable to the statutes now under consideration, and which seems to be in harmony with the decisions of this court:

"But if a subsequent statute requires the same, and also more than a former statute had made sufficient, this is in effect a repeal of so much of the former statute as declares the sufficiency of what it prescribes. And if the last act professes or manifestly intends to regulate the whole subject to which it relates, it necessarily supersedes and repeals all former acts, so far as it differs from them in its prescriptions." *Gorham* v. *Luckett,* 6 B. Mon. 146.

The New Jersey court in discussing the subject by revision or substitution said: "The rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the Legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the frame work of the act it is apparent that the Legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory." *Roche* v. *Mayor, etc., Jersey City,* 40 N. J. L. 257.

Now, when we test the two statutes hereinbefore set forth by these rules of construction, it is readily perceived that the act of 1901 covers the entire ground of the second section of the act of 1899, so far as concerns the requirements imposed upon corporations undertaking to do business in the State. The first statute only requires the corporation to file with the Secretary of State a certified copy of its articles of incorporation, and the last statute requires this and more. What purpose could the Legislature have intended to serve by leaving that section of the old statute in force when the new one completely accomplished the same end?

It is true that the old act provided that the Secretary of State should issue to the corporation so complying with the law a certified copy of the articles or certificates so filed; but

this added nothing to requirements upon the corporation. The same end is accomplished under the new act by filing the copy of the articles of incorporation with the proper officer, and a certified copy furnished by such officer would, in the absence of an express provision by statute to that effect, be evidence of compliance with the statute. Another statutory provision covers that as a rule of evidence. Kirby's Digest, § 3058. At any rate, the fact that the old act contains provisions not embraced in the new does not prevent the application of the doctrine of repeal by implication or by substitution.

When we consider the title of the act of 1901, it is plain that the Legislature intended it as a complete revision of the subject. It is entitled "An act to regulate the business of foreign corporations," etc. While the title of the act is not controlling, it may properly be looked to, in case of doubt, for the purpose of ascertaining the true legislative intent. 2 Lewis' Sutherland on Construction of Stat. § 339; 26 Am. & Eng. Enc. Law pp. 628, 629. Now, if the purpose of this act was, as the title plainly declares, to regulate the business of foreign corporations, and it contained all the requirements imposed upon the corporation by the former statute, as well as others in addition, what useful purpose could have been intended to be served by leaving the old statute in force?

The fact that the later act fails to contain a provision covering the subject embraced in the first section of the act of 1899 with reference to the corporation filing a certificate designating an agent does not affect the question of repeal of section two of the act. Section one imposed, for a wholly different purpose, an entirely different requirement on the corporation, and we do not hold that that section was repealed. It is not necessary to so hold in order to apply to section two the doctrine of implied repeal or repeal by substitution. Learned counsel for the State contend, however, that, conceding the act of 1899 was repealed by the act of 1901, as the latter expressly exempted telegraph companies and certain other corporations from its provisions, it left the former statute in force as to the corporations so exempted. Not so, if we apply the doctrine of repeal by substitution, for in that event we must presume that the Legislature meant to substitute the new act for the old, and to omit altogether from

the operation of the statute the corporations named. *Rennau v. State,* 72 Ark. 445. There is reason for the exemption, and it can be seen why the lawmakers might have deemed it inexpedient to classify the corporations ·named with corporations of other kinds doing business in the State. The methods of business pursued by these corporations ·and the relative volume of business done by them in and out of the State, as compared with that of other .corporations, might have appealed to the lawmakers as ·a reason for separating them from the same classification and· of exempting them from the operation of the general statute.

It is also contended that the act of May 6, 1905 (p. 675), required all corporations doing business in this State, except railroad corporations, to file articles of incorporation and pay the fees enumerated. We find nothing, however, in the act requiring any corporation to file articles of incorporation. Its manifest object was merely to fix the scale of fees to be paid by such corporations that other statutes required or might thereafter require.

Judgment reversed and cause dismissed.