DAVIDSON *v.* RHEA.

4-9935                                                256 S. W. 2d 744

Opinion delivered April 6, 1953.

*Eugene Coffelt, Hubert L. Burch* and *Chester Leonard,* for appellant.

*Price Dickson, Jeff Duty* and *Rex W. Perkins,* for appellee.

BELOIT TAYLOR, Special Justice. In the general election for municipal offices held in Fayetteville, Arkansas,

a city of the first class, on November 6, 1951, only one name, that of the appellee, was printed on the official ballot as a candidate for mayor. One hundred seventy-seven (177) ballots were cast in the municipal election. Upon each of ninety-one (91) of the ballots there was written in, or attempt was made to write in, the name of Arthur B. Davidson, Arthur Davidson, A. B. Davidson, or some variant spelling of one or the other of said names. The writing in or attempt to write in was below the name of P. M. Rhea in the blank space provided on official ballots following the name of the nominees for each office, or was done by striking out the name of P. M. Rhea and substituting Davidson therefor. The remaining eighty-six (86) ballots were cast for P. M. Rhea for mayor.

The returns of the election officials in the several voting precincts contained a tabulation of the write-in votes for appellant Davidson; and on November 9, 1951, appellee filed suit in the Washington Circuit Court alleging illegality of ballots counted for appellant Davidson by the election officials, seeking to have the ballots impounded and to have the election commissioners enjoined and restrained from certifying appellant Davidson as the mayor-elect of Fayetteville. A temporary restraining order issued. Thereafter, a petition for a writ of prohibition was lodged in this court. That petition was by this court treated as *certiorari*, but inasmuch as there was involved the validity of an election, the proceedings theretofore had were ordered to be dealt with as an action in the nature of an election contest and the cause was remanded with direction to the trial court to determine "(a) for whom, in fact, the votes for Davidson, were intended to benefit; (b) whether any of the 174 votes was illegally cast; and (c) whether it was lawful for an elector to write in the name of a person in the blank space on the ballot provided for that purpose." See *Per Curiam* order of this Court in *Davidson* v. *Cummings, Judge,* of Nov. 26, 1951.

Pursuant to that mandate of this court such proceedings were had. The court found, *inter alia,* that (1)

but for § 1 of Act 105 of 1935, seventy-eight (78) of the otherwise valid votes in the mayor's race should be counted for A. B. Davidson and seventy-nine (79) for P. M. Rhea; but (2) that said Act 105 of 1935 prohibiting "write-in" ballots in municipal elections in cities of the first class was and is constitutional and was and is in force and effect, not having been repealed by Act 353 of 1949. From the court's order and judgment declaring the appellee the legally elected mayor of the City of Fayetteville as a result of the aforementioned election, there is this appeal.

Appellants, in support of their appeal, urge reversal on the grounds (1) that the court erred in counting certain votes which they allege were illegally cast for appellee Rhea; (2) that the court erred in invalidating certain votes which they contend were legally cast for appellant Davidson, (3) and that the court erred in declaring that "write-in" votes were illegal in cities of the first class.

If it be found that the trial court correctly declared all write-in ballots illegal, then such finding is dispositive of this appeal. Accordingly, we shall consider whether § 1 of Act 105 of 1935, appearing as § 19-1001 Arkansas Statutes, 1947, is constitutional and, if so, whether it is repealed by § 9 of Act 353 of 1949 appearing in the Cumulative Pocket Supplement to Arkansas Statutes 1947 as § 3-826. The 1935 enactment under examination reads as follows:

"In all general elections held in cities of the first class for the election of officials of said cities of the first class no ballots shall be counted for any person whose name is written in thereon, and only votes cast for the regularly nominated and/or otherwise qualified candidates and whose names are printed on the ballot as candidates in such election in cities of the first class shall by the judges and clerks be counted."[1]

[1] Senate Bill No. 330 passed by both houses of the 1953 Legislature and vetoed by the Governor applied not only to cities of the first class, but as well to cities of the second class and incorporated towns in which there is little if any likelihood that an organized "write in" campaign could be resorted to with such secrecy as to take advantage of the unsuspecting and therefore non-voting electorate.

It is contended by appellant that this section is in conflict with Art. 3, § 2, of the Constitution of Arkansas, adopted September 7, 1874, which provides:

*"Elections shall be free and equal.* No power, civil or military, shall ever interfere to prevent free exercise of the right of suffrage; or shall any law be enacted whereby the right to vote at any election shall be made to depend upon any previous registration of the elector's name; or whereby such right shall be impaired or forfeited, except for commission of a felony at common law, upon lawful conviction thereof."[2]

As background for subsequent discussion we quote with approval from *Jones* v. *Smith,* 165 Ark. 425, 264 S. W. 950, the following: "The Constitution does not specify the method of conducting an election, except that the election shall be by ballot, that the election officers shall be sworn not to disclose how any elector shall have voted, except when required to do so in a judicial proceeding, and that each ballot 'shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters opposite the name of the elector who presents the ballot.' Art. 3, § 3. Aside from those constitutional restrictions, the Legislature has power to devise the method for conducting an election, and to provide for election officers charged with the duty of complying with the constitutional requirements, . . ." and from *John Oughton, et al.* v. *Hugh Black, et al.,* 212 Pa. St. 1, 61 Atl. 346, where the court in considering the "free and equal" election provision of the Constitution of the State of Pennsylvania, stated: "By declaring that elections shall be free and equal the constitutional guaranty is not only that 'the voter shall not be physically restrained in the exercise of his right by either civil or military authority,' *Com.* v. *Reeder,* 171 Pa. St. 505, 33 Atl. 67, 33 L. R. A. 141; but it is that by no intimidation, threat, improper influence, or coercion of any kind shall the right be interfered with. The test of the constitutional freedom of elections is the

---

[2] Amendments No. 8 and No. 39 are germane to this section but not here involved.

freedom of the elector to deposit his vote as the expression of his own unfettered will, guided only by his own conscience as he may have had it properly enlightened. . . . Each individual voter as he enters the booth is given an opportunity to freely express his will with no one by him to influence or intimidate him, and from the face of the ballot he is instructed how to mark it. . . . This is the right given to every elector, and, therefore, is an equal one.''

There is not unanimity of opinion upon the question of the constitutionality of an act such as is here in question and, while there are authorities adopting the opposite view, we are disposed to adopt the reasoning of the Supreme Court of South Dakota in the often cited case of *Chamberlain* v. *Wood,* 15 S. Dak. 216, 88 N. W. 109, 56 L. R. A. 187, in which the court stated: ''The constitutional convention and the legislature are equally the representatives of the people, and the written constitution marks only the degree of restraint which, to promote stable government, the people impose upon themselves; but whatever the people have not, by their constitution, restrained themselves from doing, they, through their representatives in the legislature, may do. The legislature, just as completely as a constitutional convention, represents the will of the people in all matters left open by the constitution: *Commonwealth* v. *Reeder,* 171 Pa. St. 505, 33 Atl. 67, 33 L. R. A. 141. Unless, therefore, the legislature is inhibited from enacting the law we are considering, it is as much the will of the people as though expressed in the constitution. Let us ask, therefore, what provision is there in the constitution inhibiting the lawmaking power from providing when, how, and under what regulations and conditions the elector may exercise the right of suffrage. The constitution has not, as we have seen, prescribed any conditions or rules governing the exercise of the right; nor has it inhibited the legislature from prescribing such rules, regulations, and conditions as it might deem proper and for the public interests. The law-making power has taken the elector at the point where the constitution has left him, and has provided

when, in what manner, and under what restrictions he may exercise the right of suffrage, and in so doing has provided: 1. That he must exercise that right by using an official ballot; 2. That he must designate in the manner specified his choice of candidates whose names are upon the official ballot, and whose names can only be placed there by a compliance with the law; 3. It has, in effect, denied to the elector the right to write the name of a candidate for whom he desires to vote upon the official ballot, or otherwise deface the same, . . . The law, in form, applies equally to all electors without discrimination, and one elector, therefore, possesses all of the rights, and no more of every other elector. The legislature therefore, having in effect limited the right of the elector to voting for candidates whose names are printed on the official ballots, he can only exercise the right in the manner prescribed. But the elector is not thereby necessarily deprived of the right of suffrage, as he has the same right as any other elector to secure the printing of the name of his candidate upon the official ballot in the manner prescribed by law—namely, by nomination of some political party, or by securing the signatures of twenty electors, in the case of a county office, to a certificate. This may occasion the elector some inconvenience and labor, but these constitute no objection to the law.''

In the same vein is the case of *State ex rel. Phelan* v. *Walsh,* 62 Conn. 260, 25 A. 1, 17 L. R. A. 364, in which the court upheld a statute which in effect prohibited the writing of the name of another person in pencil or the use of a sticker to substitute the name of another for the printed name of a candidate on the ballot.

Appellant impliedly suggests but does not seriously urge possible conflict between the statute under consideration and Art. 3, § 1, of our Constitution. It is our opinion that this contention is completely answered and swept away by the reasoning of the line of cases to which *Chamberlain* v. *Wood, supra,* and *State ex rel. Phelan* v. *Walsh* belong and which it is our decision to follow. In Louisiana, where the Constitution of 1879 did not

contain the usual "free and equal" election provision but did have a provision of like effect, as Art. 3, § 1, of our Constitution, the Supreme Court of that State had no difficulty in upholding a statute providing: "That all the names of persons voted for shall be printed on one ticket or ballot of white paper of uniform size and quality to be furnished by the Secretary of State." *State ex rel. Mize* v. *McElroy,* 44 La. Ann. 796, 11 So. 133, 16 L. R. A. 278.

It is our conclusion that § 1 of Act 105 of 1935 stands the test of constitutionality and, having so concluded, we turn next to the question of whether it was repealed by Act 353 of 1949.

Appellant contends that the whole field of election laws has been considered and is embodied in the 1949 enactment which he refers to as "The Election Code of Arkansas" and that as a consequence the prior statute of 1935 is repealed. In our opinion, the whole subject matter to which the 1949 act relates was the form and marking of the ballot. The title of that act, instead of being "The Election Code of Arkansas," as appellant apparently believes and would have this court believe, is "An Act to Prescribe the Form of Ballots for all Elections, to Prescribe the Method of Marking Ballots, and for Other Purposes."[3]

Section 9 of the act provides: "In all elections, except Primary Elections, at the bottom of each list of names for each position or office appearing on the ballot there shall be a blank line, or lines, for possible write-in votes for that position or office. There shall be no write-in votes in Primary Elections." According to our interpretation "for possible write-in votes" means for use to write in the name of a person whose name is not on the ballot if in the particular election in which the voter seeks to cast his vote it is possible—"possible" meaning permissible under the regulations legally ap-

---

[3] "The Election Code of Arkansas," containing 387 sections and covering 115 pages, was offered by bills in both houses of the Legislature in the 1949 session—Senate Bill 312 and House Bill 414. Neither passed either house.

plicable to such election. This section does not confer on the voter any right to vote by writing in the name of one whose name does not appear on the ballot. It only recognizes that that right presently exists or may at some future time exist in some elections other than Primary Elections. If the Legislature had intended to provide for write-in voting in all elections it could have done so by simple language such as used in § 3-913, Arkansas Statutes, 1947. If it had so intended, instead of the phrase "for possible write-in votes" the Legislature would have resorted to direct simple language such as used in § 3-913, Arkansas Statutes, 1947, and said "upon which the voter may *write the name of any person for whom he may wish to vote whose name is not printed on the ballot where he would have it or not printed on the ballot at all*" or words of unequivocal meaning to that same effect. (The italicized words are those of § 3-913.)

This court in the case of *Wilburn* v. *Moon,* 202 Ark. 899, 154 S. W. 2d 7, held that write-in votes were legal in Primary Elections. The Legislature by this 1949 enactment specifically states that "There shall be no write-in votes in Primary Elections." It would appear paradoxical to conclude that by the last ten words of one sentence ("for possible write-in votes for that position or office") the Legislature intended by inference to permit write-in voting in all General Elections thereby increasing the field in which write-in ballots were legal when in the next sentence ("There shall be no write-in votes in Primary Elections") it so directly, succinctly and unequivocally prohibits "write-in" voting in Primary Elections. The weakness of appellant's argument is most manifest when, as is common knowledge, in off year elections, especially in the absence of interest in some issue on the ballot as distinguished from the selection of officials, there are many times more votes cast at the Primaries in which nominees on the ballot are usually selected than there are votes cast at the General Election. In view of *Adams* v. *Whittaker,* 210 Ark. 298, 195 S. W. 2d 634, and *Fisher* v. *Taylor,* 210 Ark. 380, 196

S. W. 2d 217, this court cannot consider General Elections as expressive of the will of the electorate to the exclusion of the expression resulting from our Primary Elections.

We arrive at the inescapable conclusion that the Legislature intended, as the title states, "to prescribe the form of ballot," and through uniformity avoid confusion in the preparation of ballots in the several types of elections and to provide lines so that the voter could without difficulty write in names in such elections as "write-ins" were legal. Our interpretation permits both statutes to stand, which is as it should be. *Faver* v. *Golden, Judge,* 216 Ark. 792, 227 S. W. 2d 453.

It follows that the judgment of the court below is affirmed.

GRIFFIN SMITH, Chief Justice, and HOLT, J., dissent.