BYRD v. SHORT.

5-1426                                              307 S. W. 2d 871

Opinion delivered December 9, 1957.
[Rehearing denied January 13, 1958.]

*R. D. Smith, Jr.,* and *Carroll C. Cannon,* for appellant.

*Fred McDonald, Charles B. Roscopf* and *Burke, Moore & Burke,* for appellee.

GEORGE ROSE SMITH, J. This election contest involves the office of school director of Moro School District "B." Short, as the only nominee on the printed ballot, received 89 votes, and Byrd received 182 write-in votes. Upon these returns the county board of election commissioners and the county court declared that Short had been elected without opposition. Ark. Stats. 1947, § 80-318. Byrd then brought suit in the circuit court to contest the election. The court held that the votes for Byrd could not be counted, because he had not given written notice of his intention to be a write-in candidate at least forty-eight hours before the opening of the polls. Ark. Stats., § 3-1022.

Byrd first contends that the required notice was actually given. The written notice was left at the office of the county board of election commissioners at about two o'clock on Thursday afternoon, March 14, 1957, and was received by a commissioner later that afternoon. The polls were opened at eight o'clock on Saturday morning, March 16. Although this proof shows at most the giving of notice forty-two hours in advance, Byrd contends that by law the polls should not have been opened until 2:00 p. m. on election day.

This position is not well taken. It is true that Act 30 of 1935 directed that school elections be held between the hours of 2:00 p. m. and 6:30 p. m. Ark. Stats., § 80-308. But the voting hours were changed by Act 56 of 1949, which provides that "the general election laws, insofar as applicable, shall apply to school elections." Ark. Stats., § 80-317. By the general election laws the polls must be opened at 8:00 a. m. Ark. Stats., § 3-908. The legislature, by comprehensively applying the general election laws to school elections, covered the latter

field anew and thereby impliedly. repealed the law requiring the vote to be taken in the afternoon. See *Western Union Tel. Co.* v. *State,* 82 Ark. 302, 101 S. W. 745. Byrd relies chiefly upon.*Faver* v. *Golden,* 216 Ark. 792, 227 S. W. 2d 453, where we held that the procedure for contesting a school election was not affected by Act 56 of 1949. That case is not controlling, for there the only question concerned the proper method of contesting the election. Act 56 does not purport to alter the rules governing election contests, but it does change the procedure for conducting the election, which is the issue now before us.

It is immaterial that the requirement of forty-eight hours notice was not a part of the general election laws when they were made applicable to school elections; for the rule is that when a statute adopts the general law on a particular subject, rather than a specific statute only, the adopting statute refers not only to the existing law but also to later legislation on the subject. *Howard* v. *State ex rel. Stuckey,* 223 Ark. 634, 267 S. W. 2d 763. It is also settled that such an adoption of other laws by reference does not infringe the constitutional provision against the extension of a statute by reference to its title only. *State* v. *McKinley,* 120 Ark. 165, 179 S. W. 181.

Byrd further contends that the legislature cannot forbid the counting of write-in votes, in view of Article 3, § 11, of the constitution: "If the officers of any election shall unlawfully refuse or fail to receive, count or return the vote or ballot of any qualified elector, such vote or ballot shall nevertheless be counted upon the trial of any contest arising out of said election." A statute prohibiting write-in votes was upheld in *Davidson* v. *Rhea,* 221 Ark. 885, 256 S. W. 2d 744, and although this particular section of the constitution was not mentioned in that opinion, we do not think that it requires us to reach a different conclusion. The constitution, by its reference to the election officer's *unlawful* refusal or failure to count a particular vote, plainly contemplates that laws may be enacted to regulate the casting of the ballots. Carried logically to its conclusion

Byrd's argument would enable the voters to elect a child or a nonresident alien to office, despite laws to the contrary; for it could be demanded that the votes for such a candidate be counted. We have no doubt that this section of the constitution may be invoked only when the election officer's conduct is contrary to law.

Byrd next insists that even if the polls were properly opened at eight o'clock in the morning the proof shows a substantial compliance with the requirement that the written notice be given forty-eight hours in advance. Byrd offered to prove that the write-in campaign in his behalf was not carried on in secret, that it was initiated long before the day of the election and received much publicity, and that it led to a far heavier vote than that ordinarily cast at a school election in this district. From these facts it is argued that the actual notice of forty-two hours accomplished every purpose that the legislature could have had in mind in fixing a minimum period of forty-eight hours.

Of course this same argument could be made if no written notice at all had been given; it really amounts to an assertion that at this election the statutory notice of Byrd's intention to be a write-in candidate proved to be a useless gesture and should therefore not be insisted upon by the courts. The answer to this argument is that the doctrine of substantial compliance cannot reduce the minimum time fixed by the legislature in a statute of this kind. In election matters, as in many other fields of law, it is often necessary that some of the rules be exact. A person cannot vote until the moment he reaches the legal age of twenty-one; a candidate must qualify before the stroke of noon on a designated day before the election; a precise number of signatures are essential to a petition under the initiative and referendum law. In every case of this kind it can be said, as Byrd in effect says here, that the line is arbitrary and might as well be drawn somewhere else. Nevertheless, if the desired goal of certainty is to be reached, it is necessary that some controlling rule be adopted, however arbitrary it may seem. Here the legislature has

fixed the minimum period of notice at forty-eight hours, which must be taken to exclude the possibility that some shorter period can suffice.

Finally, Byrd argues that the county board of election commissioners erroneously went behind the certified returns of the election judges, which showed that Short had received 89 votes and Byrd 182. On this point Byrd invokes the familiar rule that a canvassing officer or board has no judicial discretion and cannot explore issues of fact that should properly be decided in an election contest. *Patton* v. *Coates,* 41 Ark. 111; *Parsons* v. *Mason,* 223 Ark. 281, 265 S. W. 2d 526. On the other hand, the canvasser's declaration of the result of the election is *prima facie* correct and becomes conclusive in the absence of an appeal or an election contest. *Shimek* v. *Janesko,* 188 Ark. 418, 66 S. W. 2d 626.

Without pausing to determine whether Short could have met the present objection by filing a suit to contest his own successful election, we do not think that the county board's action involved the ascertainment of any fact not already within the board's official knowledge. There can be no objection to the canvassing officer's taking into consideration facts that are officially of record and that he is required to know. For example, in *Howard* v. *McDiarmid,* 26 Ark. 100, the county clerk was required by law to canvass the returns and forward an abstract thereof to the secretary of state. In three precincts double elections were held, and two conflicting sets of returns were sent to the county clerk. In answer to the contention that the clerk should have forwarded both sets of results to the secretary of state, we held that it was the clerk's duty to determine from the records in his office who were the regularly appointed election judges in the precincts in question and to forward only the returns certified by those judges.

In the present case it was the duty of the county board to canvass the returns and to file one of the ballots with its findings, Ark. Stats., § 80-318; so the board knew officially that Short was the only candidate listed on the printed ballot. Byrd must therefore have

been a write-in candidate, but to qualify as such he was required to serve a written notice of his intention, at least forty-eight hours before the opening of the polls, upon a member of the county board. Ark. Stats., § 3-1022. Since the board also knew that the notice had not actually been served within the time allowed, it did not go beyond its official knowledge in holding that the votes for Short were the only ones that could legally be counted.

Affirmed.