Francis X. LAWLOR et al.,
Plaintiffs,

v.

CHICAGO BOARD OF ELECTION
COMMISSIONERS et al.,
Defendants.

No. 75 C 948.

United States District Court,
N. D. Illinois, E. D.

April 23, 1975.

Carl L. Klein, Oak Lawn, Ill., for plaintiffs.

Richard G. Schultz, Michael E. La-Velle, Wm. J. Scott, Atty. Gen., of Ill., Chicago, Ill., for defendants.

### MEMORANDUM OPINION

Before SPRECHER, Circuit Judge, and DECKER, and McLAREN, District Judges.

DECKER, District Judge.

This case arises from the untimely vacancy in the office of Representative for the Fifth Congressional District of the State of Illinois, brought about by the death of then Representative John Kluczynski. To remedy the situation, the state plans to hold a special election. Plaintiff Francis X. Lawlor, who seeks the nomination of the Republican party, and fourteen co-plaintiffs, who wish to vote for him in a primary election, seek relief from an allegedly unconstitutional aspect of the Illinois Election Code, Ill. Rev.Stat. Ch. 46 § 1–1 *et seq.* Specifically, they ask that §§ 7–5 and 7–12 ¶ 8. be held unconstitutional facially and as applied. These sections direct that no primary election be held if, for each office to be filled by election, no more than one person from any party is entitled to have his or her name printed on the primary ballot for an election at which no other offices are to be voted on. The plaintiffs further request an injunction requiring that a primary election be held. The defendants to be so enjoined are the Chicago Board of Election Commissioners, the State Board of Elections, the Governor and the Attorney General.

Because plaintiffs request relief with respect to state statutes, rather than local ordinances, their motion for the convening of a three-judge court was granted pursuant to 28 U.S.C. §§ 2281, 2284. Since that time, the Chicago Board of Election Commissioners moved to dissolve the three-judge panel, and oral argument was heard on that motion and on the propriety of issuing a preliminary injunction. For the reasons set forth below, the motion to dissolve is denied, and §§ 7–5 and 7–12 ¶ 8. are declared unconstitutional on their face.

The court has not considered, nor have we been asked to consider, any question as to the constitutionality of the ordinary nomination procedure under the Election Code followed by a person seeking office under the banner of a political party. See § 7–2. Under that procedure, the person must submit petitions with a number of signatures equal to a specified percentage of the qualified primary electors in the district. See § 7–10. In this case, the required number of signatures was 91. A person who correctly follows this procedure and otherwise qualifies is entitled to have his name printed on the primary ballot. In every primary election, voters are specifically given the right to write in the name of any person and are not restricted to vote only for those whose names are entitled to be printed on the ballot.[1]

---

[1]. Section 7–46, in pertinent part, provides as follows:

"§ 7–46. Voting of ballot—Writing in names

. . . . .

"Any primary elector may, instead of voting for any candidate for nomination or for committeeman or for delegate or alternate delegate to national nominating conventions, whose name is printed on the primary ballot, write in the name of any other person affiliated with such party as a candidate for the nomination for any office, . . . by placing to the left of and opposite the name thus written a square and placing in the square a cross (X)."

Plaintiff Lawlor attempted to follow the statutory procedure and submitted petitions bearing the signatures of over 400 voters. However, the Chicago Board of Election Commissioners found that Lawlor's statement of candidacy was not substantially in the form provided in Ill.Rev.Stat. Ch. 46, § 7–10, and ruled him ineligible for inclusion on the primary ballot by order of March 11, 1975. Consequently, the Chicago Board of Election Commissioners did not certify plaintiff to the State Board of Elections as a person entitled to have his name printed on the primary ballot. Plaintiff unsuccessfully sought to overturn the Chicago Board's determination in the Circuit Court of Cook County, Illinois.[2]

Following this setback to his quest for the Republican nomination, plaintiff Lawlor decided to challenge the sole candidate for the Republican Party whose petitions had been accepted, by running in a primary election as a write-in candidate. It is at this juncture that the challenged sections become crucial. In pertinent part, the sections read:

"No primary shall be held where the name of not more than one person of each political party is entitled to be printed on the primary ballot as a candidate for the nomination for each office to be filled at an election at which no other offices are to be voted on." (§ 7–5)

"In any case where the name of not more than one person of each political party is entitled to be printed on the primary ballot as a candidate for the nomination for any office to be filled at an election at which no other offices are to be voted on the city clerk, county clerk or State Board of Elections as the case may be shall certify the name of such person as the nominee for such office and no primary shall be held." (§ 7–12 ¶ 8.)

As matters now stand, only one person from each party, Republican and Democratic, has submitted petitions which have met the approval of the Chicago Board of Election Commissioners, and if the statutes are followed, there will be no primary election, and these two candidates will automatically be certified as the nominees of their respective parties.

Plaintiff Lawlor and his co-plaintiffs assert that when Illinois provides a primary election with the privilege of write-in voting in all other situations where any contest exists for any office, it cannot constitutionally deny a primary to them with the same write-in privileges, when they have a viable candidate who wishes to contest the election of the candidate who has obtained ballot position.

*The Three-Judge Panel Was Properly Convened*

■ The constitutional question raised is not insubstantial. No federal court has ever explicitly considered it.[3] A formal basis for equitable relief has been alleged. *Coosby v. Osser,* 409 U.S. 512, 519, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); *Idlewild Liquor Corp. v. Epstein,* 370 U.S. 713, 715, 82 S.Ct. 1294,

---

2. The Illinois Supreme Court then declined to provide direct review, leaving the state case in its present posture, pending before the Appellate Court First District.

3. A number of state court cases were presented to demonstrate that other states have electoral schemes as restrictive or more restrictive on primary voting as the Illinois scheme, and that these other schemes had been found to be "constitutional". *See, e.g., State Administrative Board of Election Laws v. Calvert,* 272 Md. 659, 327 A.2d 290 (1974); *Dayton v. Horstman,* 143 N.E.2d 789 (Ct. of Common Pleas, Montgomery Cty. 1957); *North v. Cady,* 194 Mich. 561, 161 N.W. 377 (1917); *Byrd v. Short,* 228 Ark. 369, 307 S.W.2d 871 (1957).

As the attorney for the Chicago Board of Election Commissioners conceded, these courts merely reviewed state statutes according to the appropriate *state* constitutions. No careful analysis of federal rights was made by these courts. Moreover, most of the cases predate the recent spate of United States Supreme Court cases which bear on these issues. The state cases submitted are therefore not persuasive and certainly not dispositive.

8 L.Ed.2d 794 (1962). The challenged sections of the Election Code have statewide application, though not in this single application. See *Steffel v. Thompson*, 415 U.S. 452, 457, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Moody v. Flowers*, 387 U.S. 97, 101–2, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

*Abstention Would Be Improper*

■ The abstention urged upon us by the Chicago Board of Election Commissioners would be improper. Although there is a pending state court appeal involving this same case, the issues raised there have to do with the correctness of the decision to disqualify Lawlor's petitions, and not with the federal constitutional question as to the right to have primary elections and write-in voting in those elections. No clarification of state law is necessary for the federal questions to be resolved. *McNeese v. Board of Education*, 373 U.S. 668, 673–4, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). Neither is it likely that this federal question will be obviated by the state appeal. *Lake Carriers' Ass'n, Inc. v. MacMullan*, 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Indiana State Employees' Ass'n v. Boehning*, 511 F.2d 834 (7th Cir. 1975). Consequently, this court must exercise its jurisdiction in this case. *Drexler v. Southwest Dubois School Corp.*, 504 F.2d 836, 838–9 (7th Cir. 1974).

*Constitutionality*

■ We now proceed to examine the constitutionality of the challenged statutes. The states have broad regulatory power over the process by which a person is chosen to be a Representative to the United States Congress.[4] In Illinois, although alternative methods of selecting party nominees may be available, the legislature has chosen to limit the selection process to one method—the primary election. The winner of the primary election achieves the benefit of having his name printed on the ballot in the general election. Having decided to hold primaries through the Election Code, Illinois must do so constitutionally so as to provide equal protection to its citizens under the Fourteenth Amendment to the Constitution. *Bullock v. Carter*, 405 U.S. 134, 144, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *McDonald v. Board of Election*, 394 U.S. 802, 807–8, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); *Williams v. Rhodes*, 393 U.S. 23, 29, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Generally, as a part of the electoral process, a primary election has the same protections associated with it as does a general election. The crucial role of a primary election in the total electoral process has long been recognized. As stated in *Nixon v. Herndon*, 273 U.S. 536, 540, 47 S.Ct. 446, 71 L.Ed. 759 (1927):

"If the defendants' conduct was a wrong to the plaintiff the same reasons that allow a recovery for denying the plaintiff a vote at a final election allow it for denying a vote at the primary election that may determine the final result."

*See also, Lubin v. Panish*, 415 U.S. 709, 715, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Bullock v. Carter, supra*, 405 U.S. at 146, 92 S.Ct. 849; *Smith v. Allwright*, 321 U.S. 649, 659–62, 64 S.Ct. 757, 88 L.Ed. 987 (1944).

In providing for primary elections, the Illinois legislature in § 7–46 has specifically included the right to cast a vote in a primary by "writing-in" the name of a candidate which does not appear on the printed ballot form. Write-in candidates can be elected and can certify their acceptances within thirty days after the election. Ill.Rev.Stat. Ch. 46, §§ 7–19 ¶ 2, 7–58. Having granted that right, the state may not then unreasonably or arbitrarily limit such right. Thus, we are not concerned with judicially creating new constitutional rights to have primaries or to have write-ins in primaries; we are concerned only with constitutionally protecting the rights already granted to Illinois voters.

4. U. S. Constitution, Article II, Section 1.

It has been recognized that the rights of the voters are inextricably intertwined with the rights of candidates. See *Lubin v. Panish, supra,* 415 U.S. at 714, 94 S.Ct. 1315; *Bullock v. Carter, supra,* 405 U.S. at 143, 92 S.Ct. 849.

■ Voters in a primary are interested in making their choice known to guarantee that their candidate, whether on the primary ballot, or written in, will be insured of the advantage of a place on the ballot in the general election. As stated in *Kusper v. Pontikes,* 414 U.S. 51, 58, 94 S.Ct. 303, 308, 38 L.Ed.2d 260 (1973):

> "Under our political system, a basic function of a political party is to select the candidates for public office to be offered to the voters at general elections. *A prime objective of most voters in associating themselves with a particular party must surely be to gain a voice in that selection process.* By preventing the appellee from participating at all in Democratic primary elections during the statutory period [because she had recently voted in the Republican primary], the Illinois statute deprived her of any voice in choosing the party's candidates, and thus substantially abridged her ability to associate effectively with the party of her choice." (Emphasis added.)

See also *Williams v. Rhodes, supra,* 393 U.S. at 31, 89 S.Ct. 5.

If this right of association is lost at the primary level, it is small consolation that a diluted opportunity to write in the name of the same candidate will be afforded in the general election. It is the advantage of having a candidate's name actually printed on the ballot, as opposed to the opportunity to have his name written in by each voter in a general election, that makes crucial any restriction on the right to choose a desirable candidate at the primary level.

■ We now proceed to closely scrutinize the two Illinois statutes to determine whether they operate constitutionally within the limits set down by *Reed*

*v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971):

> "The Equal Protection Clause [of the Fourteenth Amendment] . . . does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920)."

The only discernible purpose of §§ 7–5 and 7–12 ¶ 8. would appear to be to avoid primary elections where there is no contest between serious candidates. The purpose is implemented by referring only to those persons seeking office who are entitled to have their names printed on the primary ballot, by virtue of having circulated proper petitions. In this case, if the only rational criterion the state has used to determine the presence of a contest is the 91 signatures of voters, this criterion has been met by two persons. Notwithstanding this fact, the statutes prevent a primary election which is, by the Election Code's own operation, no less futile, or just as valid, as primary elections it otherwise holds. The voters are, in a sense, in the hands of the listed candidates; if more than one qualifies to be listed on the primary ballot, for any office, the voters are given a choice (by vote *or* write-in) as to the entire ballot; if not, they are denied such a choice. This is particularly burdensome in the case of a "late-blooming" candidate (who comes to public attention too close to the primary to file petitions of candidacy), or of a popular avowed candidate who, like Lawlor, fails to qualify for listing on the primary ballot due to some technical deficiency unrelated to his popular support.

Illinois may be justified, for the purpose of encouraging the filing of proper petitions, to keep an office-seeker who commits a technical error off the primary ballot. However, these sections as applied here do more. They prevent the election itself from being held. *Jenness v. Fortson*, 403 U.S. 431, 434, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). Thus, in the face of clear voter support, the avowed office-seeker is deprived of any chance of winning the primary, and in this case, the 400 voters who have unequivocally expressed a desire to vote for him are disenfranchised at the primary level. The opportunity to have one's name listed on a primary ballot (which the state has reasonably provided by the statutory qualifications) should not be equated with the opportunity to be chosen by a party to run for office. By operation of the statute in these unusual circumstances, however, that is exactly what will happen. The deprivation sustained by these people is absolute; there is no way they or the candidate of their choice can get the candidate's name printed on the general ballot.

This case thus differs in two crucial aspects from *McDonald v. Board of Election, supra,* in which another section of the Election Code was upheld under traditional equal protection analysis. There, pretrial detainees complained that the section extended the availability of absentee ballots only to certain other groups. However, there was no absolute bar to the exercise of franchise. 394 U.S. at 809, 89 S.Ct. 1404. Also, the statute there challenged was characterized as the end product of many years of legislative development in the extension of the benefit of absentee voting. *See O'Brien v. Skinner*, 414 U.S. 524, 94 S. Ct. 740, 38 L.Ed.2d 702 (1974).

There is nothing remedial about the two statutes here. They operate with surgical finality to bar plaintiffs fully and finally from participation in a party primary.

The challenged sections do not admit of a purpose of restricting the general ballot positions only to persons who file proper primary petitions, since under the usual circumstance, a primary election is held in which a write-in candidate may prevail without the filing of any petition, proper or improper. *Cf. Storer v. Brown*, 415 U.S. 724, 731–3, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).

Here, as in *Kusper v. Pontikes, supra,* the 400 voters, including the fourteen co-plaintiffs, are deprived of any opportunity to participate in the primary process. They had no control over the technical defect in the Lawlor petitions, and neither do other voters who may intend to write in the name of someone other than plaintiff Lawlor or his intended opponent on the primary ballot. The valuable rights of write-in voters who wish to support a serious and avowed candidate should not depend on the pure chance that other persons may or may not circulate proper petitions for at least one office. The result is an invidious and patently arbitrary discrimination against those voters and candidates who wish to exercise their primary electoral privileges when only one person from each party is entitled to have his name printed on the ballot.

Although we have not been furnished with any evidence as to the number of occasions in which primary elections have been avoided under the unusual circumstance presented by the two statutes, or as to the money savings accomplished by the elimination of primary elections in such cases, we do not think that the right to participate in a primary election can depend on these considerations. "The process of qualifying candidates for a place on the ballot may not constitutionally be measured solely in dollars." *Lubin v. Panish, supra,* 415 U.S. at 716, 94 S.Ct. at 1320. *Id. Bullock v. Carter, supra.*

Illinois has failed to show any rational or compelling reasons for this restriction. We hold that the present statutes

violate the equal protection clause of the 14th Amendment, and cannot bar a primary under the circumstances shown in this case.

A mandatory injunction will be ordered, and the parties will appear before Judge Bernard M. Decker for the purpose of discussing the terms of such injunction order.