# SUPPLEMENT.

*Elections. Constitutional Law,* Delegation of powers, Suspension of law.
*Governor. Public Safety. War.*

The Governor, in the opinion of five of the Justices, had no authority
under the provisions of St. 1942, c. 13, or of St. 1941, c. 719, § 7, or
otherwise to advance the date of the State primaries to be held in
1944 and other dates dependent thereon or connected therewith, or to
modify certain provisions of law relative to registration of voters and
absent voting so as to prevent Massachusetts men and women in the
armed forces of the United States from being deprived of their right
to exercise their voting franchise by means of absent voting. The
Chief Justice was of the opinion that the power to advance the date
of the 1944 primaries was conferred upon the Governor by § 2 of St.
1942, c. 13.

The order quoted, *post,* pages 764–765, was adopted by
the Governor and Council on January 5, 1944, and, on the
same day, was transmitted to the Justices of the Supreme
Judicial Court. On January 26, 1944, the Justices pre-
sented the following answers:

To His Excellency the Governor and The Honorable
Council of the Commonwealth of Massachusetts:

The undersigned Justice of the Supreme Judicial Court,
in reply to your order of January 5, 1944, respectfully sub-
mits this answer to the question therein contained.

The fundamental question presented by the order is
whether the Governor has authority to advance the date
of the State primaries to be held in the current year — a
date that is now fixed by G. L. (Ter. Ed.) c. 53, § 28, as
appearing in St. 1938, c. 473, § 7, as "the seventh Tuesday
preceding biennial state elections."

While the General Court cannot add to or subtract from
the qualifications for voting fixed by the Constitution, it

has broad power to regulate the method of voting. It has done so by many statutes, including statutes providing for official ballots to be used at elections and for the selection at the State primaries of candidates whose names shall be printed on these official ballots. The precise date at which such State primaries are to be held is an administrative detail of the statutory method of voting. In my opinion, authority to determine this administrative detail may be conferred upon the Governor by the General Court under the grant of power and authority to the General Court by Part II, c. 1, § 1, art. 4, of the Constitution without conflicting with art. 30 of the Declaration of Rights of the Constitution providing for the separation of powers. Such authority, of course, must be exercised subject to constitutional limitations that regulations of the methods of voting shall not be discriminatory or unreasonable or defeat or impair the constitutional right to vote.

Furthermore, I am of opinion that authority to determine the date of the State primaries as an administrative detail of the statutory method of voting is authority that the Governor may legally deem to be "expedient" to meet the "supreme emergency of such a state of war" within the meaning of St. 1942, c. 13, § 2. This statute, in my opinion, discloses an intention on the part of the General Court to authorize the Governor to act for the protection of the government of the Commonwealth and the rights, privileges and interests of its citizens — not merely for the protection of their physical bodies and material property. One of the important interests of such citizens is the right to vote guaranteed by the Constitution. And I am of opinion that this authority extends to protecting this constitutional right against risk of the loss thereof by reason of the unusual conditions resulting from the existence of a state of war. It may well be that, according to the statutory provisions regulating the method of voting, a large number of qualified voters will be deprived of their constitutional right to vote because the period between the date fixed by statute for the State primaries and election day is too short for the official ballots to be prepared and sent to qualified voters of the

Commonwealth in the armed services of the United States in time to vote on or before election day. The risk of loss of this constitutional right to vote is, in my opinion, a danger incident to the existence of a state of war for protection against which the Governor is authorized to act.

Authority in the Governor to act to fix the date of the State primaries is not to be denied because the general grant of authority to him may be so broad as to include authority that cannot constitutionally be conferred upon him. The statute by its terms indicates that it is to be regarded as severable, in accordance with the principle that "a statute which would be unconstitutional as applied to a certain class of cases, and is constitutional as applied to another class, may be held to have been intended to apply only to the latter class, if this seems in harmony with the general purpose of the Legislature." *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, 241. In my opinion, an interpretation of the statute as authorizing the Governor to advance the date of the State primaries to be held in the current year is "in harmony with the general purpose of the Legislature" and the statute should be interpreted as authorizing such action by him.

The fact that the exercise of authority by the Governor to change the date of the State primaries to be held in the current year will render inoperative the present statutory provision fixing that date does not preclude the existence of such authority in view of St. 1942, c. 13, § 11, which provides expressly for such a situation. Said § 11 as applied to the date of the State primaries is not in my opinion obnoxious to the provision of art. 20 of the Declaration of Rights that the "power of suspending the laws, or the execution of the laws, ought never to be exercised but by the legislature, or by authority derived from it, to be exercised in such particular cases only as the legislature shall expressly provide for." The action of the Governor would be by authority "derived from" the General Court and in the particular case of a "supreme emergency of such a state of war."

I answer the fundamental question submitted that the

Governor has authority under St. 1942, c. 13, § 2, to advance the date of the State primaries to be held in the current year.

Since it is not within the scope of the duty or power of the Justices to examine a complicated system of statutory provisions and express an opinion as to the authority of the Governor to act with respect to matters therein dealt with which are not made the subject of a specific inquiry (*Opinions of the Justices*, 239 Mass. 606, 612; 247 Mass. 589, 598), I respectfully request to be excused from answering the subsidiary questions.

FRED T. FIELD.

To His Excellency the Governor and The Honorable Council of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court agree with the opinion signed by Mr. Justice Qua.

CHARLES H. DONAHUE.
HENRY T. LUMMUS.
ARTHUR W. DOLAN.
JAMES J. RONAN.

To His Excellency the Governor and The Honorable Council of the Commonwealth of Massachusetts:

The undersigned Justice of the Supreme Judicial Court in reply to your order of January 5, 1944, which is herein set forth, respectfully submits this answer to the question therein contained.

The order is as follows:

"WHEREAS, uncertainty exists as to whether or not men and women from Massachusetts who are in the armed forces of the United States will, by reason of the shortness of the period of time between state primaries and state elections or by reason of the existence of certain provisions of law relative to registration of voters and absent voting, (being the provisions of general law relative thereto, as affected by chapter 390 of the Acts of 1943), be deprived of their right to exercise their voting

franchise by means of absent voting, so called, at the state election to be held in the current year, which loss of franchise would tend to undermine their morale and be detrimental to the war effort; and

"WHEREAS, it is urgent that the date of the state primaries to be held in the current year and other dates dependent thereon or connected therewith be advanced, and said provisions of law be modified, so as to remove such uncertainty, so far as possible; therefore, be it

"ORDERED, that the Justices of the Supreme Judicial Court be required to give their opinions to the Governor and Council upon the following important question of law:

"Can the Governor, by executive order, in the exercise of authority which, under chapter 13 of the acts of 1942, was conferred by the General Court upon him as the supreme executive magistrate of the Commonwealth and commander-in-chief of the military and naval forces thereof, in the exercise of authority vested in him under section 7 of chapter 719 of the acts of 1941 and section 1 of said chapter 13, or in the exercise of other authority vested in him by law, advance the date of the state primaries to be held in the current year and the other dates aforesaid, and modify said provisions of law relative to registration of voters and absent voting, so as to prevent Massachusetts men and women in the armed forces of the United States from being deprived as aforesaid of their right to exercise their voting franchise by means of absent voting, so called?"

The Constitution confers upon the Legislature full power and authority from time to time to make, ordain and establish all manner of wholesome and reasonable orders, laws, statutes and ordinances, directions and instructions, "so as the same be not repugnant or contrary to this constitution, as they shall judge to be for the good and welfare of this commonwealth." Constitution, Part II, c. 1, § 1, art. 4. The Legislature is therefore authorized to enact appropriate laws regulating the holding of primaries and elec-

tions, including the fixing of the time for the State primaries. *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63. *Thacher* v. *Secretary of the Commonwealth,* 250 Mass. 188. *O'Brien* v. *Election Commissioners of Boston,* 257 Mass. 332, 338. *Wood* v. *Election Commissioners of Cambridge,* 269 Mass. 67. *Manser* v. *Secretary of the Commonwealth,* 301 Mass. 264. *Brennan* v. *Election Commissioners of Boston,* 310 Mass. 784. *Compton* v. *State Ballot Law Commission,* 311 Mass. 643. *Morrissey* v. *State Ballot Law Commission,* 312 Mass. 121. Moreover, by art. 45 of the Amendments the Legislature has been authorized to provide by law for absent voting. See St. 1943, c. 390, relative to absent voting by residents of the Commonwealth in the armed forces; *Opinion of the Justices,* 67 R. I. 465; 140 Am. L. R. 1096. In pursuance of its constitutional powers the Legislature has fixed the time for holding the State primaries as "the seventh Tuesday preceding biennial state elections." G. L. (Ter. Ed.) c. 53, § 28, as appearing in St. 1938, c. 473, § 7. In the questions submitted the Justices are asked whether the Governor has authority to take the proposed action under (1) c. 13 of the Acts of 1942, (2) § 7 of c. 719 of the Acts of 1941, taken in connection with § 1 of said c. 13 of the Acts of 1942, or (3) in the exercise of other authority vested in him by law.

The only part of c. 13 of the Acts of 1942 which could be thought to confer this authority is the first paragraph of § 2, which reads as follows: "During the effective period of this act, as set forth in section twelve, the governor, in addition to any other authority vested in him by law, shall have and may exercise any and all authority over persons and property, necessary or expedient for meeting the supreme emergency of such a state of war, which the general court in the exercise of its constitutional authority may confer upon him as the supreme executive magistrate of the commonwealth and commander-in-chief of the military and naval forces thereof, and specifically, but without limiting the generality of the foregoing, the governor shall have and may exercise such authority relative to any or all of the following:" There is nothing in the seventeen numbered

subparagraphs of this section immediately following the paragraph just quoted which could reasonably be thought to confer the suggested authority. The quoted paragraph, if read literally, especially when read in its relation to § 4 of the same chapter purporting to render inoperative any law inconsistent with an order or regulation of the Governor promulgated under the act, constitutes an attempt on the part of the Legislature to confer upon the Governor at a single stroke all authority of every kind over persons or property which it could constitutionally confer upon him by specific enactments wherein the precise powers intended to be granted and the manner of their exercise should be particularly stated, subject only to the limitation that the action taken by the Governor shall be "necessary or expedient for meeting the supreme emergency" of war.

It is unnecessary to discuss the question whether the paragraph quoted should, as a matter of construction, be read literally, unqualified by the reference in its title to "the safety of the commonwealth," or by the reference in its preamble to the "conditions of imminent danger" incident to war, or by the design to provide for unforeseen emergencies affecting the safety of the State or its people which might seem to permeate the act as a whole, to give color to its words, and in some degree to tend to limit their application to conditions immediately affecting the public safety. Nor is it necessary to discuss the question whether the Legislature could by express enactment confer upon the Governor authority to fix, within specified limits, the time of holding the State primaries — a subject of which there is not the slightest mention in the statute. On both of these ques'' tions I express no opinion. It is assumed, for present purposes only, that the answers to both of these questions would not be such as to preclude the existence of the power.

I am of opinion that the Legislature cannot constitutionally grant to the Governor a roving commission to repeal or amend by executive order unspecified provisions included anywhere in the entire body of the statute law of the Commonwealth and in all the rules, regulations, ordinances, and by-laws in force throughout the jurisdiction, with no other

qualification or direction than that his exercise of this power be "necessary" or even no more than "expedient" for meeting "the supreme emergency" of war — a limitation so elastic that it is impossible to imagine what might be done within its extent in almost every field of administration and of jurisprudence. It is one thing for the Legislature to pass enabling acts under which large discretion may be given to executive or administrative officers to be exercised within defined fields for defined ends. It is quite another thing for the Legislature to grant to the executive without specification or definition of means or ends all the powers which it could grant by specific enactment in all fields which may be affected by a factor so all pervasive as war. The first is a proper exercise of the legislative function. The second is a surrender of the legislative function to the executive. *Panama Refining Co.* v. *Ryan*, 293 U. S. 388. *A. L. A. Schechter Poultry Corp.* v. *United States*, 295 U. S. 495, 553. See *Brodbine* v. *Revere*, 182 Mass. 598, 600; *Wyeth* v. *Cambridge Board of Health*, 200 Mass. 474, 481; *Boston* v. *Chelsea*, 212 Mass. 127; *Attorney General* v. *Brissenden*, 271 Mass. 172, 180; *Opinion of the Justices*, 302 Mass. 605, 614.

We are not here dealing with the constitutional powers of the Commander-in-Chief of the military and naval forces of the Commonwealth in an area of hostilities or with the scope of executive powers in general in time of war. We are dealing only with an attempt to add to those powers still other powers by legislative delegation. War does not abrogate the Constitution. It supplies no excuse for confusing legislative powers with executive powers. If the Legislature can confer upon the Governor the powers here proposed it is difficult to see why the Legislature could not, in war or peace, set up commissions to deal with entire subjects of governmental concern such as agriculture, or labor, or banking, with no other guide than that the respective commissions should do, without regard to preexisting law, or in conflict with it, whatever might be necessary or expedient to promote the interests committed to their charge. The difficulty cannot be overcome by saying

that any act the Governor may perform can be tested after he has performed it and held valid if the Legislature could have authorized that particular act, and invalid if it could not. Definition is especially necessary where the grant of power includes authority to nullify or supersede existing statutes. Article 20 of the Declaration of Rights reads, "The power of suspending the laws, or the execution of the laws, ought never to be exercised but by the legislature, or by authority derived from it, to be exercised in such particular cases only as the legislature shall expressly provide for." Here the Legislature has failed expressly to provide for the particular case. See *Ahlgren* v. *Cromwell*, 179 Md. 243.

In my opinion it follows that the first paragraph of § 2 of the 1942 act does not authorize the Governor to suspend or to alter the provisions of existing laws in matters in relation to which no express provision is made for particular cases in the various subparagraphs of the section. To conclude otherwise than as here stated, it seems to me, if it would not fully open the door to government by edict, at least would leave that door ajar. As to how far the several subparagraphs may be valid I express no opinion. None of them touches the present problem.

In my opinion there is nothing in § 7 of c. 719 of the Acts of 1941, whether taken separately or together with § 1 of c. 13 of the Acts of 1942, which confers upon the Governor power to advance the date of the State primaries or otherwise to change the operation of the laws applicable thereto. Section 7 reads as follows: "The governor shall have full power and authority to co-operate with the federal authorities and with the governors of other states in matters pertaining to the common defense or to the common welfare, and also so to co-operate with the military and naval forces of the United States and of the other states, and to take any measures which he may deem proper to carry into effect any request of the President of the United States for action looking to the national defense or to the public safety."

This section contains no mention of the subject of the State primaries; nor does the chapter of which it is a part.

Surely there is an ample field for the coöperation mentioned in this section and for the carrying into effect of any request of the President, if he has made or shall make any request for State action "looking to the national defense or to the public safety" without implying a grant of power to change the election laws by executive fiat. An attempt to make such a grant would not ordinarily be implied from such language. It would be assumed that the Governor must act within the framework of established laws. Section 7 must be construed with reference to the purpose disclosed by the statute as a whole. Its title is "An Act to provide for the safety of the commonwealth in time of military emergency." Its provisions bear out its title. They have to do with such matters as blackouts, air raid warnings, civilian defence, fire and police protection, and under special circumstances, when necessary for the protection of the public, the taking of property, of the means of conveyance, and of food and fuel; and there are other provisions for the preservation of life and property. The objects of the act are related primarily to the immediate and tangible dangers to be apprehended from a state of war rather than to such matters as the regulation of primaries. In § 8 (b) express provision is made when it is intended that orders of the Governor shall supersede certain standing laws. In a democracy laws relating to the conduct of elections, including primaries, are matters over which it is peculiarly difficult under any circumstances to imply a legislative intent to vest an elective officer, however exalted and responsible, with personal power that, in some hands and under some circumstances, might be susceptible of abuse to political and partisan advantage. Article 8 of the Declaration of Rights reads, "In order to prevent those, who are vested with authority, from becoming oppressors, the people have a right, at such periods and in such manner as they shall establish by their frame of government, to cause their public officers to return to private life; and to fill up vacant places by certain and regular elections and appointments." If this provision does not directly apply to primaries, it nevertheless announces a principle. And if the Governor

can change the operation of existing law as to the date of the primaries he can change its operation in numerous other respects not now anticipated and possibly of serious import, bearing upon the people's choice of their elective officers.

Finally, if the power suggested can be found in § 7 of the 1941 act, it can be found only on the theory that the act delegates to the Governor a general power to change standing laws without specifying with necessary particularity the nature of such changes and the objects for which they can be made. I have already dealt with this difficulty in connection with the 1942 act.

I know of no law from which the Governor can derive the power to advance the date of the primaries.

I therefore feel compelled to the conclusion that the advancement of the date of the State primaries, however desirable, requires action by the Legislature. In my opinion the answer to the question submitted should be "No."

STANLEY E. QUA.