JOHN W. SEARS & others vs. SECRETARY OF THE
COMMONWEALTH
(and a companion case[1]).

Suffolk.   December 4, 1975. — December 31, 1975.

Present: REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Primary.   Constitutional Law,* Primary, Delegation of powers, Emer-
gency law.   *Elections.   Political Committee.   Statute,* Effective
date, Emergency law.   *Governor.*

The qualifications of delegates to a national convention of a political
party are governed by the convention rules, and under the Federal
Constitution States may not impose contrary requirements in the
absence of a substantial State interest.   [397-398]

Each national political party authorizes the selection of delegates to
its national convention according to a system adopted by a State
committee [398]; direct election of delegates is not required by
either the Constitution of the United States or the Constitution of
the Commonwealth [398-399].

Discrimination against independent voters, "disfavored" voters, and
"splinter groups" amounting to a denial of equal protection of the
laws does not follow from the provisions of G. L. c. 53, § 70B, as
appearing in St. 1975, c. 600, § 13, that delegates to national
conventions of political parties at which presidential candidates are
to be nominated are to be selected pursuant to a system adopted
by the party's State committee, provided such system does not
"include the placing of the names of delegates on the presidential
primary ballot."   [400]

There is no constitutional requirement that the votes of national party
convention delegates reflect the preference or preferences expressed
by voters at a presidential primary.   [400]

Selection of delegates to a national party convention is not a legisla-
tive function, and St. 1975, c. 600, authorizing the State commit-
tee of a political party to determine the system by which national

―――――――――――

[1] Alvin Levin & others *vs.* Secretary of the Commonwealth &
others.

convention delegates will be selected is not an unlawful delegation of such function. [400-401]

St. 1975, c. 600, § 13, rightfully sets forth procedures and guidelines for the selection of delegates to a national convention without pressing specified, detailed requirements on State committees, and does not constitute an unlawful delegation of legislative authority. [401-402]

St. 1975, c. 600, § 13, directing that "the distribution of delegates . . . to a national convention under the system adopted by the State committee shall reflect the preference expressed by the voters on the presidential preference portion of the ballot at the presidential primary" is not so vague as to render the statute unconstitutional on its face [403]; however, the system selected must involve some identification of delegates with the presidential preference expressed at the primary [403].

A statement by the Governor declaring St. 1975, c. 600, an emergency law complied with the requirements of art. 48, The Referendum II, of the Amendments to the Constitution of the Commonwealth by setting forth "as facts constituting the emergency" that deferred operation of the law would result in a delay in "the proper filing of a copy of the rules and procedures adopted by the State committee covering all aspects of the delegate selection process" and in a delay in the filing of nomination papers of candidates for State, ward, and town committees. [404-406]

That the Legislature intended St. 1975, c. 600, to apply to the 1976 presidential primary and to the selection of State, town, and ward committee members in 1976 is made clear by §§ 3, 4, and 5 of c. 600, referring to the time by which certain organizational meetings should occur in the case of committee members elected in 1976, as well as by the State secretary's contemporaneous interpretation of the legislative intent, the Governor's emergency declaration, and the legislative history of the statute. [406]

Even though two statutory deadlines for the completion of certain requirements of St. 1975, c. 600, had expired prior to the effective date of the statute, October 27, 1975, such expirations did not prevent c. 600 from governing the operation of the presidential primary in 1976 and the selection of State, ward and town committees in 1976; there was no insuperable difficulty nor prejudice to plaintiffs resulting from the late filing of delegate selection plans or in serving notice to the State secretary of the number of persons to serve on a local committee, particularly where he appears to be planning to recognize notices given to him after October 27, 1975. [406-409]

The requirement of St. 1975, c. 600, which became effective on October 27, 1975, that nomination papers for State, ward, and town

committees to be elected on March 2, 1976, be filed by November 18, 1975, was not shown to be so arbitrary and unreasonable as to constitute denial of due process of law to plaintiffs intending "to participate in the process of selection of delegates" to the 1976 national convention [406-407]; the State secretary need not accept nomination papers filed after November 18, 1975, but, in his discretion he may accept late filed nomination papers where the rights of no other candidate for the same position are significantly prejudiced thereby [408-409].

Two CIVIL ACTIONS commenced in the Superior Court on September 30, 1975, and October 15, 1975, respectively.

The cases were reserved and reported to the Appeals Court by *Lynch*, J. The Supreme Judicial Court granted a request for direct review.

*Robert G. Steward* (*John W. Sears* with him) for the plaintiffs.

*Thomas R. Kiley*, Assistant Attorney General, for the Secretary of the Commonwealth.

WILKINS, J. The plaintiffs in each of these cases[2] raise substantially the same issues challenging various aspects of St. 1975, c. 600, which made changes in the procedures by which presidential primaries are to be conducted in the Commonwealth.

The plaintiffs contest the constitutionality of § 13 of c. 600 which amends G. L. c. 53, § 70B, to change the method by which delegates to national conventions of political parties are chosen. Under § 70B, as amended, delegates to national conventions of political parties at which presidential candidates are to be nominated are to be selected pursuant to a system adopted by the party's State committee, but the system may not "include the

---

[2] The other plaintiffs in the Sears case are Virginia D. Benjamin, Mary B. Newman, Daniel J. Carmen, Joel P. Greene, William L. Saltonstall, and Nancy S. Serafini.

The other plaintiffs in the Levin case are John A. Businger, Richard A. Cauchi, Charles I. Clough, Jr., Saundra Graham, Gary Jones, Robert Schaeffer, and Mary E. Williamson.

placing of the names of delegates on the presidential primary ballot." G. L. c. 53, § 70B, as appearing in St. 1975, c. 600, § 13. Thus the previous system by which national convention delegates were elected at presidential primaries has been abandoned. Other changes effected by c. 600 concerning the method of selection and the voting of national convention delegates are challenged by the plaintiffs on constitutional grounds.

In addition, the plaintiffs argue specifically that the procedures set forth in c. 600 for the selection of State, ward, and town committee members do not apply to the 1976 presidential primary. They contend generally that c. 600, which was enacted on September 11, 1975, and purportedly made effective by an emergency declaration issued by the Governor on October 27, 1975, should be construed to be applicable first with respect to the 1980 presidential primary. The plaintiffs in the Sears case also argue that the application of c. 600 to the 1976 presidential primary denies them constitutional rights.

Each of these actions for declaratory relief was reserved and reported to the Appeals Court without decision and transferred here on joint application for direct appellate review. The plaintiffs in each case are persons asserting an interest in the application and operation of certain portions of c. 600.[3] The Secretary of the Commonwealth

---

[3] In the Sears case, each of the plaintiffs is a registered voter, and all but one (Serafini) are enrolled members of the Republican party. Sears is chairman of the Massachusetts Republican State Committee. Benjamin is cochairman of a "youth task force" of a committee established by the Massachusetts Republican State Committee to assure that the process for selection of delegates to the 1976 Republican national convention is open to women, youth, and minorities. Carmen is active in a group of Republicans "which espouses what are generally considered 'conservative' political philosophies and programs." Greene has been a member and officer of The Ripon Society, Inc., "a Republican research and policy organization which espouses so-called 'liberal' or 'progressive' philosophies and programs." Sears and Benjamin intend to seek election to the Republican State Committee, while Saltonstall and Greene intend to seek election, respectively, to Republican ward and town committees. All of these plain-

is a defendant in each case. In the Levin case, other defendants were named.[4] Although the Levin complaint raised objections to the system for selection of national convention delegates adopted (but not yet filed) by the Democratic State Committee, no argument has been advanced to us concerning these objections.

We will consider first the plaintiffs' various constitutional challenges to the new statutory provisions concerning the selection of delegates to national political conventions, and then we will consider specific challenges to the application of the changes made by c. 600 to the 1976 presidential primary.

## Challenges to the Delegate Selection System.

The plaintiffs attack the constitutionality of those provisions of c. 600 which deal with the method by which delegates to national party conventions are to be

tiffs intend "to participate in the process of selecting delegates to the 1976 Republican National Convention."

In the Levin case, each of the plaintiffs is a registered voter, and all but two (Cauchi and Schaeffer) are enrolled in the Democratic party. Levin, Businger, Clough, and Jones are members of Democratic town committees and intend to seek reelection. Graham is a member of a city ward committee and intends to stand for reelection. Williamson intends to stand for election to her town's Democratic town committee. Businger and Jones intend to stand for election in 1976 to the Democratic State Committee. Clough is a member of the Democratic State Committee, to which he intends to seek reelection. Clough and Jones intend as well to stand for election as delegates to the 1976 Democratic national convention. All of these plaintiffs desire and intend to participate in the process of selecting delegates to the 1976 Democratic national convention and to vote in the 1976 Democratic presidential primary.

At least one of the plaintiffs has standing to raise each of the issues decided by us, and we do not pause to consider whether individual plaintiffs lack standing.

[4] The other defendants are Charles F. Flaherty, Jr., Eva Hester, and Dorothy O'Donnell, "chairman and vice chairpersons" of the Democratic State Committee and are named as representatives of the Democratic State Committee.

selected. After analyzing the limits placed on a State's regulation of the selection of such delegates by *Cousins* v. *Wigoda,* 419 U.S. 477 (1975), we will discuss the extent of any Federal or State constitutional requirements concerning delegate selection systems and then will consider the plaintiffs' specific constitutional challenges to c. 600. Our conclusion is that on all issues which present an "actual controversy" (see G. L. c. 231A, § 1) c. 600 meets constitutional requirements and that it would be premature to deal with hypothetical questions concerning the legality of delegate selection systems. No such system has yet been filed.[5]

a. The qualifications of delegates to a national party convention are left largely to the national party's convention rules, and, under the Federal Constitution, States may not impose contrary requirements in the absence of a substantial State interest. *Cousins* v. *Wigoda,* 419 U.S. 477 (1975). The *Cousins* case, which concerned a dispute over the seating of delegates from Illinois to the 1976 Democratic national convention, held that State law does not have primacy over a national political party's rules in the determination of the qualifications and eligibility of delegates to a party's national convention. *Id.* at 483. National political parties have "a constitutionally protected right of political association," and a State's interference with that right of association may be justified only if the State's interest is compelling. *Id.* at 487-489. "The States themselves have no constitutionally mandated role in the great task of the selection of Presidential and Vice-Presidential candidates." *Id.* at 489-490. The court in the *Cousins* case said that the asserted

[5] The Democratic State Committee has proposed to adopt a system for the selection of national convention delegates, subject to change as to details, which has not been filed with the State secretary. Although the statement of agreed facts in the Sears case indicates that the Republican State Committee has not adopted a delegate selection system, we were advised at oral argument that such a plan now has been adopted, but not filed.

State interest in protecting the integrity of its electoral process was not compelling in the context of the selection of delegates to the national party convention and concluded that the party guidelines for the selection of delegates prevailed over any inconsistent practices pursuant to State law. *Id.* at 491.

While the *Cousins* case makes clear the limited authority of the States in mandating delegate selection procedures and practices, we are not presented with a clash between statutory delegate selection requirements and national party rules. In the cases now before this court, we are not confronted with a conflict between State law and the rules of either national party. Neither national party mandates the election of national convention delegates at a party primary. Each authorizes the selection of such delegates according to a system adopted by a State committee. The *Cousins* opinion aids in describing the constitutional context in which the issues argued to us arise, but it does not provide a direct answer to any of them.

b. Neither the Constitution of the United States nor the Constitution of the Commonwealth requires the direct election of delegates to a national party convention. Each group of plaintiffs contends that the elimination of direct election of delegates denies them (a) effective participation in the nomination process and (b) their constitutional right to equal protection of the laws.

Granting that political party nominating processes are an important part of the procedure by which the ultimate office holder is chosen (see *Newberry* v. *United States,* 256 U.S. 232, 286 [1921] [Pitney, J., concurring in part]), we are not aware of any authority in support of the proposition that each voter has a constitutional right to vote for national convention delegates. See *Cousins* v. *Wigoda, supra,* 483 n.4.[6] Of course, neither the Federal

---

[6] Where a primary election is provided for by statute, the right to vote and have that vote counted fairly and properly is entitled to

nor the State Constitution alludes to presidential nomina-
ting processes or to the right of a voter to express his
views on possible candidates or delegates to a party
convention. Many States do not select their delegates to
national party conventions by direct election.[7] The
holding in the *Cousins* case had the effect of permitting a
group of delegates who were not elected by direct vote to
take the place of a group which was elected, but the
*Cousins* case did not deal directly with the question of a
citizen's right to vote for delegates to a national party
convention. In this Commonwealth, we have selected
national convention delegates since 1912 by direct vote in
primaries, but we have not always done so.[8]

Although arguments against a change from direct
election of delegates may be advanced forcefully, as the
plaintiffs have done, these arguments bear on the merits
of the legislative judgment in adopting c. 600 and do not
rise to an effective constitutional challenge. Provisions of
the Constitution of the Commonwealth protecting a
citizen's precious personal right to vote for his elected
representatives (*Attorney Gen.* v. *Suffolk County Ap-
portionment Comm'rs*, 224 Mass. 598, 604 [1916]) have
not been applied to require the selection at primaries of
candidates for election to public office or the election of
delegates to national party conventions. See *Opinion of
the Justices*, 359 Mass. 775, 777 (1971). A member of a
committee of a political party is not a public officer (see

---

scrupulous protection. *United States* v. *Classic*, 313 U.S. 299, 316-
317 (1941). Devices designed to circumvent the rights of voters on
account of race, of course, will not be tolerated. *Terry* v. *Adams*,
345 U.S. 461, 469-470 (1953). *Smith* v. *Allwright*, 321 U.S. 649,
660-662 (1944).

[7] In 1976, delegates will be elected at primaries in twenty States.
In the other States, delegates will be selected through caucuses, con-
ventions, or some other internal party mechanism.

[8] Statute 1912, c. 254, § 1, provided that national party convention
delegates should be elected by "direct plurality vote in primaries."
Previously national convention delegates were selected at party cau-
cuses.

*Opinion of the Justices,* 347 Mass. 797, 799-800 [1964]); *Attorney Gen.* v. *Drohan,* 169 Mass. 534, 536 [1897]), nor is a delegate to a national political party convention.

The plaintiffs' equal protection of the laws argument is that c. 600 discriminates against independents, "disfavored" voters, and "splinter groups." They argue that the selection of delegates pursuant to plans adopted by the central party organizations will favor party regulars and will dilute the influence of persons such as the plaintiffs. Of course, until those plans are adopted and filed, one cannot be certain that the plaintiffs' fears will be fulfilled. In any event, the concept of equal protection of the laws does not compel the selection of convention delegates so that every point of view is represented. Our republican form of government may involve the selection of representatives by a majority, or sometimes a plurality, of the votes cast and can often result in the underrepresentation of various ideologies. The statutory pattern does not deny the plaintiffs the opportunity to influence (a) the selection of State committee members, (b) the formulation of the system for delegate selection, or (c) the selection of persons as delegates pursuant to that system. We see no invidious discrimination against the plaintiffs. Cf. *American Party of Tex.* v. *White,* 415 U. S. 767, 781 (1974); *Walgren* v. *Selectmen of Amherst,* 373 F. Supp. 624 (D. Mass. 1974).

c. There is no constitutional requirement that the votes of party convention delegates reflect the preference or preferences expressed by the voters at a presidential primary. The plaintiffs object that there is no assurance that the presidential preference or preferences expressed by the voters will be honored, even for one ballot.[9] The operation of a delegate selection system under c. 600 may

---

[9] Prior to the enactment of St. 1975, c. 600, delegates and alternates were subject to a statutory direction to vote on the first roll call for president in accordance with presidential primary preference results, unless released by the candidate. See G. L. c. 53, § 70I, as appearing in St. 1972, c. 63. The current requirement is that on the first roll

result in greater adherence by delegates to preferences expressed in primaries than existed under former law. However that may be, there is no due process or other constitutional requirement that a delegate to a national convention adhere to the results of a preference vote expressed in the presidential primary. Relief from the threat of delegate unresponsiveness might come from changes in national party rules, adoption of a responsive State party delegate selection plan, national or State legislation within constitutional limits, or constitutional amendment. It cannot be found now in the Federal or State Constitutions.

d. Statutory authorization of the State committee of a political party to determine the system by which delegates to a national convention will be selected does not involve, as the plaintiffs argue, the unlawful delegation of a legislative function. The selection of delegates to a national party convention, of course, is not a legislative function. If the Legislature were to attempt to choose convention delegates, it would interfere unconstitutionally with the political party's right of free association.

Although the Legislature may not select delegates to a national political convention, it has the right to prescribe procedures to be followed in the selection of delegates (see *Opinion of the Justices*, 315 Mass. 761, 765-766 [1944]), provided that it does not intrude unconstitutionally on the rights of association of the political parties. We see no violation, however, of any constitutional principle by the way in which § 70B leaves to State committees the right to decide how national convention delegates will be chosen, requires that the system "be set forth in written rules and procedures covering all aspects of the delegate selection process," and directs that a copy of the rules and procedures be filed with the State Secre-

call for president all delegates and alternate delegates "whose selection is subject by party rule to the approval of a presidential candidate" shall vote for that candidate unless released by him. See G. L. c. 53, § 70I, as appearing in St. 1975, c. 600, § 19.

tary. G. L. c. 53, § 70B, as appearing in St. 1975, c. 600, § 13.

The formulation of a delegate selection system is subject to various standards under § 70B. Thus, § 70B does not present a standardless delegation of a legislative function. It is implicit that the delegate selection system adopted by a State committee must comply with lawful requirements of the national party. The system may be subjected to judicial scrutiny on a claim that its operation violates the constitutional rights of a particular person or class of persons. See *Terry* v. *Adams*, 345 U.S. 461 (1953) (racial discrimination); *Ripon Soc'y, Inc.* v. *National Republican Party*, 525 F.2d 567 (D.C. Cir. 1975). In addition, § 70B contains guides and limitations concerning the delegate selection system. The system must "not include the placing of the names of delegates on the presidential primary ballot." There must be at least two district delegates and alternate district delegates from each congressional district. The distribution of delegates under the system must reflect "the preference expressed by the voters on the presidential preference portion of the ballot at the presidential primary." G. L. c. 53, § 70B. Assuming that the last quoted language has some meaning (a point we discuss subsequently), it is unclear what greater direction the plaintiffs believe the Legislature had to give to State committees.

Without deciding that any statutory guidelines are constitutionally required in State legislation directing a State political committee to develop, file, and follow a delegate selection system, we are confident that § 70B does not involve an unlawful delegation of legislative authority. Legislation which acknowledges the State's secondary role in the delegate selection process, by not pressing specified, detailed requirements on a State committee, is constitutionally acceptable.[10]

---

[10] This situation is unlike that in *Corning Glass Works* v. *Ann & Hope, Inc. of Danvers*, 363 Mass. 409, 423 (1973), where a private

e. The plaintiffs argue further that the statutory direction that "the distribution of delegates . . . shall reflect the preference expressed by the voters on the presidential preference portion of the ballot at the presidential primary" is so vague as to make § 70B unconstitutional. The quoted language is hardly precise. Argument can be made that it authorizes both a "winner takes all" result and a system which allocates delegates among two or more presidential candidates in proportion to votes received. The word "preference" in the singular supports the former view, while the words "distribution of delegates" suggest the latter. Clearly, however, the system adopted by a State committee must be designed to take into account the results of the presidential preference portion of the ballot at the presidential primary. Although, at this time, we do not and cannot pass on any system which may be filed by a State committee, the standard does not render the statute invalid on its face. The fact that the Legislature could have made the challenged language more clear "does not mean that the statute which it in fact drafted is unconstitutionally vague." *United States* v. *Powell*, 423 U.S. 87, 94 (1975). Because no specific statutory standard linking delegate selection with presidential preference voting in the primary is required constitutionally, a broad construction of the standard in § 70B might best avoid a charge of unconstitutional vagueness. In any event, the system selected will have to involve some identification of delegates with the presidential preference expressed at the primary.

### *The Application of c. 600 to the 1976 Presidential Primary.*

The plaintiffs argue that the changes made by c. 600 do not apply to the 1976 presidential primary as a matter

corporation was given the legislative function of regulating resale prices under the fair trade law without any guiding policy or standard. See *Opinion of the Justices*, 368 Mass. 831, 835 (1975).

of statutory construction.   The plaintiffs in the Sears case
contend further that the immmediate application of the
provisions of c. 600 would deny them due process of law.
We conclude that the Legislature intended that c. 600
affect the 1976 presidential primary and the events
preceding it and that there is no constitutional barrier to
its doing so.   For an understanding of the plaintiffs'
arguments, we must describe certain changes made by
c. 600.

Chapter 600 was enacted on September 11, 1975,
without an emergency preamble, and in the normal
course would have become effective ninety days later.
See *Opinion of the Justices,* 368 Mass. 889, 891 (1975).
From the point of view of most citizens of the Common-
wealth, the most significant change was to move the date
of the presidential primary from the last Tuesday in April
to early March (the first Tuesday after the first Monday
in March).   G.L. c. 53, § 28, as amended through
St. 1975, c. 600, § 8.   As would be expected, the dates for
various necessary preliminary steps were adjusted to
reflect the earlier primary date.   However, the adjust-
ments in some instances established deadlines which were
prior to the effective date of c. 600.   Notice of the
number of ward and town committee members to be
elected had to be given on or before the third Tuesday
in October.   G. L. c. 52, § 9, as amended through
St. 1975, c. 600, § 6.   Nomination papers for candidates
for election to State, ward, and town committees had to
be filed on or before the third Tuesday in November.
G. L. c. 53, § 48, as appearing in St. 1975, c. 600, § 12.
In addition, assuming c. 600 was intended to affect the
1976 presidential primary, delegate selection plans had to
be filed on or before October 1, twenty days after the
enactment of c. 600.   G. L. c. 53, § 70B, as appearing in
St. 1975, c. 600, § 13.

a. Because the date on which c. 600 became operative
is important in passing on other arguments of the plain-
tiffs, we turn first to the question whether the Governor's

letter of October 27, 1975, declaring c. 600 to be effective immediately as an emergency measure, was sufficient to achieve its avowed purpose. On that same day, the Justices of this court advised the Governor that a gubernatorial emergency declaration filed with the State secretary before the ninetieth day after enactment of a bill had the effect of bringing the act into effect on the filing of the declaration. *Opinion of the Justices,* 368 Mass. 889 (1975). None of the plaintiffs has asked this court to reconsider and reject the opinion expressed in the *Opinion of the Justices.* They do argue, however, that the letter which purported to put c. 600 into immediate operation was ineffective because it failed to recite the facts showing the emergency, as required by art. 48, The Referendum II, of the Amendments to the Constitution of the Commonwealth.

The Governor's letter declaring that c. 600 should take effect forthwith complied with constitutional requirements and, therefore, had its intended effect. That letter recites that an emergency exists because otherwise there will be (1) a delay in "the proper filing of a copy of the rules and procedures adopted by the state committee covering all aspects of the delegate selection process"; (2) a delay in the proper filing of notice of the number of committee members to be elected; (3) a delay in the filing of nomination papers of candidates for State, ward, and town committees; and (4) "public confusion and inconvenience by further reducing the time available for complying with the requirements of the act prior to the primary." We believe that at least the first and third of these statements contain sufficient facts to support the declaration, although they are conclusions of law on the effect of the emergency declaration. As we indicate subsequently, these conclusions of law are substantially correct and, for that reason, are "facts" for the purposes of determining compliance with the constitutional mandate that the Governor's statement recite "the facts constituting the emergency." These facts are sufficient to

support the Governor's conclusion because from them one reasonably might find that an emergency existed. *Prescott* v. *Secretary of the Commonwealth,* 299 Mass. 191, 197-198 (1938). See *Molesworth* v. *Secretary of the Commonwealth,* 347 Mass. 47 (1964); *Russell* v. *Treasurer & Receiver Gen.,* 331 Mass. 501, 503-504 (1954).[11]

b. We have no doubt that the Legislature intended c. 600 to govern the operation of the presidential primary in 1976 and the selection of State, ward, and town committee members in 1976. Certain amendments made by c. 600 refer to the time by which certain organizational meetings should occur in the case of committee members elected in 1976. See St. 1975, c. 600, §§ 3, 4, and 5. These references, which grant exceptions to time limits otherwise imposed, would be unnecessary if the 1976 presidential primary were to be held in late April pursuant to the statutory schedule in effect prior to c. 600. If there were any question whether the Legislature intended c. 600 to apply to the 1976 presidential primary, we might turn to the State secretary's contemporaneous interpretation of its intent, the. Governor's understanding as shown by his emergency letter, and the legislative history of the development of c. 600, which shows that c. 600 was intended to apply to the 1976 presidential primary and events preceding it.

c. The plaintiffs do not argue that the general intent of the Legislature was to make the provisions of c. 600 apply for the first time to the 1980 presidential primary. They argue, however, that the Legislature failed to achieve its purpose of making c. 600 applicable to the

---

[11] The rules and procedures concerning delegate selection could not be filed effectively until c. 600 became operative. The Governor's action in advancing the effective date of c. 600, therefore, advanced the first possible date for the effective filing of delegate selection plans. The date for filing nomination papers for State, ward, and town committees provided in c. 600 (November 18, 1975) could be effective as set forth in the act only if the effective date of c. 600 were advanced.

1976 presidential primary because it passed the act so late that some statutory deadlines had expired before the act was effective and that, therefore, the act cannot possibly be implemented during 1975 and 1976. We turn then to an analysis of the consequences of the fact that two statutory deadlines for the completion of certain statutory requirements had expired by October 27.

The passing of the October 1 deadline for the filing of rules and procedures for the selection of delegates does not prevent c. 600 from regulating the selection of delegates to the 1976 national conventions. We would be slow to conclude that a State committee could frustrate the purpose of c. 600 by declining to file its delegate selection plan seasonably, particularly where the statute provides no alternative in the event such a plan is not filed on time. We see no insuperable difficulty in the late filing of a party's delegate selection plan for its 1976 national convention. There can be only one set of rules for each party. Of course, the earlier the rules are filed, the greater the opportunity for dissemination of their terms and for the timely conclusion of any court challenge. As to the 1976 presidential primary, however, we believe the October 1 deadline was unrealistic and must be treated as directory in order to fulfil the legislative intent that c. 600 apply to 1976. See *Liberty Mut. Ins. Co.* v. *Acting Comm'r of Ins.*, 265 Mass. 23, 29 (1928).

The record does not disclose any specific harm to the individual plaintiffs in these cases resulting from the delay in the filing of delegate selection plans. A prompt filing of the delegate selection rules would reduce uncertainties and may expedite the resolution of any further litigation. Remedial legislation authorizing the filing of delegate selection rules applicable to the 1976 national conventions by a specific date might be helpful.

The second statutory deadline which had passed by October 27 was the date for each city or town committee to notify the State secretary of the number of local committee members to be elected at the primary. G. L.

c. 52, § 9, as amended through St. 1975, c. 600, § 6. The notice must be given on or before the third Tuesday in October, which was October 21 this year. The determination of the number of persons to serve on a local committee is necessary in order to permit persons to organize slates of candidates for whom nomination papers may be certified and filed.

We believe that c. 600 must be implemented for the 1976 presidential primary despite the earlier expiration of the stated deadline for notice to the State secretary of the number to serve on local committees. Any difficulties do not appear to be substantial. None of the plaintiffs shows that he or she has been prejudiced with respect to his or her candidacy for a local committee. In September, the State secretary notified local committee chairmen that the Governor might declare c. 600 to be an emergency law and that the new deadline of October 21 might become significant. Although the statements of agreed facts do not disclose the degree of compliance with the notice requirement on October 27, when c. 600 became effective, a signed, but unnotarized, "affidavit" of the State secretary, which appears in the record in the Sears case indicates that as of November 3 a "substantial majority of the city and town committees of both political parties [had] given notice of the number of members to be elected to ward and town committees as provided by [G. L. c. 52, § 9]."[12] From his "affidavit" the State secretary appears to be planning to recognize notices given to him after October 27. He does not seem to be applying automatically that provision in G. L.

---

[12] Two hundred and forty-one Republican town committees had given notice, leaving 71 of whom 27 did not give notice in 1972 "and appear to be inactive or non-existent." Twenty-nine Republican city committees out of 39 had given notice. Two hundred and twenty-eight Democratic town committees had given notice, leaving 86 of whom 43 did not give notice in 1972 "and appear to be inactive or non-existent." Thirty-seven out of 39 Democratic city committees had given notice.

c. 52, § 9, which fixes the number of local committee members at not more than ten, if timely notice is not received from a local committee. We believe that in these circumstances the State secretary has discretion to grant a reasonable extension of the notification date, at least where no candidate for a local committee has been prejudiced by reliance on the statutory limit of ten which applies in the absence of timely notice.

At this point in our discussion of the application of changes made by c. 600 to the 1976 presidential primary we have considered and disposed of all the arguments advanced in the Levin case.

The plaintiffs in the Sears case continue their argument, however, saying that the requirement that nomination papers for State, ward, and town committee membership be filed by November 18 is arbitrary, unworkable, and unconstitutional. We disagree.

Any candidate for State, ward, or town committee must obtain signatures on official nomination papers, have them certified by the local registrars of voters at least one week prior to the filing deadline, and file the certified papers with the State secretary. G. L. c. 53, §§ 46, 48, as amended through St. 1975, c. 139, § 1, and St. 1975, c. 139, § 2, respectively. Prior to c. 600, the deadlines for presenting papers for certification and for filing with the State secretary were the first and second Tuesdays of February (February 3 and February 10 in 1976). See G. L. c. 53, §§ 46, 48. Section 12 of c. 600, amending G. L. c. 53, § 48, had the effect of advancing these dates to the second and third Tuesdays of November (November 12[13] and November 18 in 1975). The Sears plaintiffs contend that there was insufficient time to comply with the nomination process between October 27, when c. 600 became effective, and the statutory deadline.

---

[13] November 11 was a State holiday. G. L. c. 4, § 7, Eighteenth, as appearing in St. 1974, c. 493, § 1. See G. L. c. 4, § 9.

The deadline for filing nomination papers for State, ward, and town committees to be elected on March 2, 1976, is not unconstitutional on its face. Persons interested in serving on State and local committees are among the most politically sophisticated of the citizens of the Commonwealth. Chapter 600 was enacted in September, and nomination papers were available in the middle of September when St. 1975, c. 352, became effective. The possibility of an early effective date by order of the Governor was known in September. Only five valid signatures are needed for nomination to a local political committee and fifty for nomination to the State committee. G. L. c. 53, § 70D, as amended by St. 1975, c. 600, § 15. The Sears plaintiffs have failed to prove that the deadlines for certification and filing of nomination papers are so arbitrary and unreasonable as to constitute a denial of due process of law.

From information made available at oral argument we know that certain nomination papers were filed late with the State secretary, and we suspect that others are being held by local authorities pursuant to an interlocutory order entered by a single justice of this court. We decline to direct that these papers be recognized as legally effective. However, we believe it is within the power and discretion of the State secretary to recognize such papers where (a) the number of committee members shown on the papers is consistent with the number to be elected and (b) there is no competing slate of candidates. Where the circumstances are otherwise, committee members may have to be elected by writing in the appropriate information on the primary ballot. If there is a failure to elect, there are statutory provisions which indicate how committee members may be selected. See, as to ward and town committee members, G. L. c. 52, § 4, as amended by St. 1975, c. 600, § 5, and G. L. c. 53, § 70G, as appearing in St. 1975, c. 600, § 18, and, as to State committee members, G. L. c. 52, § 1, as amended by St. 1975, c. 600, §§ 2, 3.

## Conclusion.

Judgments should be entered in each action declaring that (1) the direct election of delegates to a national convention of a political party is not constitutionally required; (2) there is no constitutional obligation that a delegate to a convention of a national political party vote at any time in response to the vote on the presidential preference portion of the primary ballot; (3) the authority to adopt rules and procedures governing the selection of delegates to a convention of a national party constitutionally may be delegated to the State committee of that party, as provided in G. L. c. 53, § 70B; and (4) the provisions of G. L. c. 53, § 70B, requiring that the distribution of delegates under the system of selection reflect the vote on the presidential preference portion of the primary ballot are not unconstitutionally vague. The judgments should further declare that (5) the provisions of c. 600 are applicable to the 1976 presidential primary and the events preceding it; (6) St. 1975, c. 600, became effective on October 27, 1975; (7) rules and procedures covering all aspects of the delegate selection process may be filed subsequent to October 1 and, if now filed promptly, will be effective; (8) a notice to the State secretary from a ward or town committee of the number of persons to be elected to the committee at the presidential primary was received effectively if filed on or before October 27, 1975, and, in the discretion of the State secretary, may be treated as effectively filed if filed subsequent to that date, provided the rights of any candidate for election who seasonably has filed nomination papers are not significantly prejudiced thereby; and (9) the State secretary need not accept nomination papers filed after November 18, 1975, from a candidate for a State, ward, or town committee, but, in his discretion, he may accept such late filed nomination papers where the

rights of no other candidate for the same position are significantly prejudiced thereby.[14]

*So ordered.*

[14] The motion of the plaintiffs in the Sears case for an order di-
recting the State secretary to accept nomination papers up to and
including December 16, 1975 (one week after the effective date of
c. 600), which was referred to the full court by a single justice of this
court, is denied.