(No. 52888.—

DONALD L. TOTTEN *et al.*, Appellants, v. THE STATE
BOARD OF ELECTIONS *et al.*, Appellees.

*Announced January 28, 1980.—Opinion filed March 21, 1980.*

Michaél Kreloff and Franklin S. Schwerin, of Samuels, Schwerin & Kreloff, of Chicago, for appellants.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for appellee State Board of Elections.

Andrew M. Raucci and Michael P. McClelland, of Kusper & Raucci, Chartered, of Chicago, for appellee Illinois Republican State Central Committee.

MR. JUSTICE WARD delivered the opinion of the court:

Donald L. Totten and other plaintiffs brought an action in the circuit court of Cook County against the State Board of Elections (the Board) and the Illinois Republican State Central Committee. In it they sought to enjoin the Board from refusing to certify the presidential preferences of candidates for delegate and alternate delegate to the Republican National Convention and to

order the Board to permit such preferences to appear next to the names of candidates on ballots to be used in the March 18, 1980, primary election.

The circuit court held for the defendants, and we took plaintiffs' appeal to this court under Rule 302(b) (73 Ill. 2d R. 302(b)). After expedited briefing and oral argument we announced our decision from the bench, affirming the circuit court's judgment and stating that an opinion would follow.

Prior to the enactment on July 19, 1979, of House Bill 2618 (Pub. Act 81—135), section 7—10.3 of the Election Code required candidates for delegate or alternate delegate to a national nominating convention to file with the Board a statement of candidacy and to state the names of their presidential preferences or to declare that they were "uncommitted."

Section 7—10.3, as amended by House Bill 2618, now provides:

"(A) Except as otherwise provided in paragraph (B) of this Section, a candidate for delegate or alternate delegate to a national nominating convention shall file with the State Board of Elections at the time of filing the statement of candidacy described in Section 7—10, a statement declaring the name of his preference for President of the United States or that he is uncommitted.

(B) The State central committee of a political party may choose to file a statement with the State Board of Elections not less than 30 days prior to the first day for filing the statement of candidacy described in Section 7—10, specifying that a candidate for delegate or alternate delegate shall not be required to file an official declaration statement pursuant to this Section.

If the State central committee of a political party specifies that any such official declaration statement is not required to be filed by the candidates for delegates and alternate delegates to the national nominating convention of any such political party, then no such declaration statement shall be required to be made." Ill. Rev. Stat. 1979, ch. 46, par. 7—10.3.

Section 7—19, which was also amended, states:

"Next to the name of each candidate for delegate or

alternate delegate to a national noninating convention shall appear either (a) the name of the candidate's preference for President of the United States or the word 'uncommitted' or (b) no official designation, depending upon the action taken by the State central committee pursuant to Section 7—10.3 of this Act." Ill. Rev. Stat. 1979, ch. 46, par. 7—19.

Acting under subsection (B) of section 7—10.3 the Republican State Central Committee on August 3, 1979, decided by resolution to run a "blind primary" and not to require candidates to file an official declaration of presidential preferences. The Board interpreted subsections (a) and (b) of section 7—19 to be mutually exclusive. The Board judged that subsection (B) of section 7—10.3 conferred upon the State central committee of a political party the option of having a so-called blind primary, which, when exercised, would bind the candidates of that party.

The plaintiffs note that subsection (B) of section 7—10.3 states that a candidate " 'shall not be required to file an official declaration statement' " rather than that a candidate "shall not be permitted ***." From this they argue that subsection (A) and it are not mutually exclusive. They say that subsection (B) was intended by the legislature to provide independent candidates with a preferable alternative to declaring that they were uncommitted, which they describe as having a " 'rather weak, vacillating, unflattering connotation.' "

It is fundamental that the language of a statute is to be given its plain and ordinary meaning so that the legislature's intendment may be ascertained and given effect. (*Dienes v. Holland* (1979), 78 Ill. 2d 8, 15; *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139.) We do not consider that the plaintiffs' contention that subsections (A) and (B) were not to be mutually exclusive is valid. The legislature's use of the language "shall not be required" was not inconsistent with the Board's interpretation, as subsection (A) imposes on candidates seeking election as delegates the *requirement* of filing declarations of presidential prefer-

ence or declarations of being uncommitted.

It is also fundamental in statutory construction that each section of a statute is to be examined in relation to all of its other provisions, so that when they are examined as a whole the intendment and meaning of the statute may be ascertained. (*Huckaba v. Cox* (1958), 14 Ill. 2d 126, 131. See also *Winks v. Board of Education* (1979), 78 Ill. 2d 128, 135.) Considering section 7—19 with section 7—10.3 it is clear that subsections (A) and (B) of section 7—10.3 are to be interpreted as separate and mutually exclusive alternatives. Section 7—19 specifically states that next to the name of a candidate shall appear "*either* (a) the name of the candidate's preference for President of the United States or the word 'uncommitted' *or* (b) no official designation, *depending* upon the action taken by the State central committee pursuant to Section 7—10.3 of the Act." (Emphasis added.)

Thus, under section 7—10.3(B), a candidate for delegate is required to file with his statement of candidacy a declaration of presidential preference or a declaration of being "uncommitted" unless the State central committee of the political party exercises the option under section 7—10.3(B) for a blind primary, in which case neither declaration will appear on the ballot next to the candidate's name. This court has said: "The legislative intent should be sought primarily from the language used in the statute. When the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature. (*Weiss Memorial Hospital v. Kroncke,* 12 Ill. 2d 98, 105; *Belfield v. Coop,* 8 Ill. 2d 293, 307.)" *Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84.

The plaintiffs also raise two constitutional objections to section 7—10.3. First, they contend that by vesting the State central committee of a political party with "unbridled discretion to choose between two different selection processes" the legislature has improperly delegated its sovereign power of administering the election process

to an organization of private persons. To support this, they cite the decision in *People ex rel. Rudman v. Rini* (1976), 64 Ill. 2d 321, but that decision has no application. *Rini* involved section 25—11 of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 25—11), which provided that if a vacancy arose on a county board before a general election the president of the board had authority to give to the county central committee of the incumbent's political party the power to appoint a successor to what otherwise would be an elected office. In declaring that statute unconstitutional this court held that "[t]he power to appoint public officers is the sovereign power of the State *** [and] cannot be conferred upon a private person or group ***." 64 Ill. 2d 321, 326.

Niether section 7—10.3 nor section 7—19 delegates to the State central committee of a political party authority to appoint public officials or delegates to a national nominating convention. The selection of candidates is left entirely to the electorate. Whether presidential preferences will appear on the primary election ballot or not may be affected by these sections but they certainly do not prevent voters from obtaining this information from the candidates.

Too, a political party possesses certain inherent rights, founded on the constitutional right of association, which pertain to the party's internal management. (*Cousins v. Wigoda* (1975), 419 U.S. 477, 42 L. Ed. 2d 595, 95 S. Ct. 541.) These may be exercised so long as there is no violation of statutory limitations or the constitutional rights of voters. (See, *e.g., Lawlor v. Chicago Board of Election Commissioners* (N.D. Ill. 1975), 395 F. Supp. 692.) Such rights of a political party are illustrated in section 7—8(h) of the Election Code (Ill. Rev. Stat. 1977, ch. 46, par. 7—8(h)), which provides: "[The State central committee] and its officers shall have the powers usually exercised by such committees and by the officers thereof, not inconsistent with the provisions of this Article." See also Ill. Rev. Stat. 1977, ch. 46, par. 7—14.1 (State central com-

mittee empowered to choose between different alterna-
tives of electing delegates to a national nominating conven-
tion, *i.e.*, by primary election or State convention); Ill.
Rev. Stat., 1978 Supp., ch. 46, par. 7—14.2 (State central
committee given the authority to choose the method of
selecting delegates to national conventions other than
nominating conventions).

This court in *People ex rel. Kell v. Kramer* (1928),
328 Ill. 512, when interpreting a similar statutory provi-
sion, stated:

> "The right of political parties to make nomina-
> tions is not a right enumerated in the constitution
> but is a political privilege which may be regulated
> by the legislature, and in absence of such regula-
> tion is exercised in accordance with the will of
> members of the political party concerned, as that
> will is expressed through rules, customs, conven-
> tions or caucuses of such political organization."
> (328 Ill. 512, 518-19.)

See also *People ex rel. Lindstrand v. Emmerson* (1929),
333 Ill. 606; *Cousins v. Wigoda* (1975), 419 U.S. 477, 42
L. Ed. 2d 595, 95 S. Ct. 541; *Marchioro v. Chaney* (1979),
442 U.S. 191, 60 L. Ed. 2d 816, 99 S. Ct. 2243; *Sears
v. Secretary of the Commonwealth* (1975), 369 Mass. 392,
341 N.E.2d 264.

The plaintiffs argue also that as presidential prefer-
ences will only appear on the Democratic primary ballot
the two parties are, in effect, being treated differently in
violation of article III, section 4, of the 1970 Constitution
of Illinois, which states in part: "Laws governing voter
registration and conduct of elections shall be general and
uniform." Ill. Const. 1970, art. III, sec. 4.

Under our constitution, the State Board of Elections is
charged with the responsibility of supervising and adminis-
tering elections and insuring that they will be conducted in
a general and uniform manner. The debates of the 1970
Constitutional Convention and other commentary (Ill.
Const. 1970, art. III, sec. 4, Constitutional Commentary

(Smith-Hurd 1971)) show, however, that the uniformity provision refers to the mechanics of voter registration, residency requirements and other election and voting procedures. It does not address and was not intended to require uniformity of rules governing the management of a political party's internal affairs.

The decision for a blind primary was an alternative available to both the Democratic and Republican parties. That the State central committee of the Republican Party chose this alternative, which was in contrast to the Democratic Party's decision to allow the designation of candidates' presidential preferences, does not affect the manner in which the election is held. It is not a matter within the uniformity provision of article III, section 4, of the Illinois Constitution.

Accordingly, for the reasons stated the judgment of the circuit court of Cook County was affirmed.

*Judgment affirmed.*